McNeer & Dodd et al. *v.* Norfleet et al.

[74 South. 577, Division B.]

1. Fraud. *Misrepresentation. Evidence. Intent.*

To constitute fraud it is unnecessary that a statement be made with the intention of deceiving, if it is a statement of fact, but not true as a matter of fact, since it has all the effect, so far as inducing the contract is concerned, as it would have had if made deliberately for the purpose of deceiving.

2. Fʀᴀᴜᴅ. *Misrepresentation. Evidence.*

In a suit for damages for misrepresenting the acreage of land leased, it was error to exclude from the consideration of the jury evidence of the items of damages suffered by plaintiffs' making up the necessary and reasonable expenditures incurred by them in preparing to cultivate the land, for although the jury are to judge as to the necessity and reasonableness of expenditures made, they should have such information, coupled with other proof, as will enable them to determine the extent of the damage of the party in case they find facts favorable to the plaintiff.

3. Eᴠɪᴅᴇɴᴄᴇ. *Admissions. Compromise.*

While an offer of compromise cannot be shown as being an admission of the party making the offer, still if the party makes a statement of fact, as a fact, it may be proven as an admission even though it was made during the discussion of the compromise.

4. Tʀɪᴀʟ. *Distress for rent. Trial of issue on avowry. Burden of proof.*

Under Code 1906, section 2864, so providing, on the trial of an issue on an avowry, the burden of proof is on the avowant, the landlord, and he shall have the right to open and conclude the argument, when an issue has been tendered on the avowry, denying the allegations of the avowry, the burden is on the landlord or avowant, and if the relation of landlord and tenant, the amount of the contract or the amount of supplies furnished, is denied, the landlord must assume the burden and prove his contention, but if the relation he admitted, and the amount of the rent contract for supplies furnished is not denied, no issue is made on the avowry. If the plaintiff undertakes to confess and avoid by an affirmative plea, setting up new matters and issue is tendered on this plea, then the burden shifts and the plaintiff assumes the burden, and has the right of opening and concluding the evidence and the argument.

Aᴘᴘᴇᴀʟ from the circuit court of Panola county.

Hᴏɴ. E. D. Dɪɴᴋɪɴs, Judge.

Distress for rent by F. M. Norfleet and others against McNeer & Dodd and others, wherein the latter replevied the goods, and the former filed an avowry as assignee of a rent contract alleging a landlord's lien, McNeer & Dodd filing a plea of recoupment alleg-

ing the landlord's misrepresentation as to acreage. From a judgment for the avowments, defendants appeal.

The facts are fully stated in the opinion of the court.

*Elmore & Ruff,* for appellant.

The very statutory rules of the "Landlord and Tenant" chapter with reference to the burden of proof are, as we attempted to point out in our first brief, nothing more and nothing less than an application of the common law itself in determining on whom the burden of proof rests. Examine those rules. They are the last line of section 2861, the last paragraph of section 2864 and section 2869. Each rule as applied to the state of pleading to which it refers is in exact correspondence with the common law. The common law would have placed the burden of proof on those pleadings exactly where the statute places it. But the lower court and the contention of appellees, besides being forced by their position to contend that the issue in this case was on the avowry, when in fact it was not so, would here reverse the common law rules, the very rules applied by the statute, and place the burden of proof on the pleader who joined issue by a flat negation of new affirmative matter, and give him who merely stands on denial who challenges us to proof, the opening and closing of the evidence and argument to the jury.

We respectfully deny that "the statute undertakes to prescribe and limit the defenses which are allowable in actions by landlords for the enforcement of liens," if by this is meant what we suppose it to mean: that is, that the tenant is limited and prescribed to certain replications. If that is not what is meant, we have no concern with it. If it has such reference, the language of the statute is in careful opposition, front to front, with such contention, because the tenant "may reply any other facts constituting a legal answer."

The statement that "the legislature has seen fit to provide in our statute that in proceedings to enforce a landlord's lien, the burden of proof shall be upon the avowant, the landlord" is as we judge not intended to mean that such is the fact in all such proceedings but only so where the landlord files an avowry. For "in proceedings to enforce a landlord's lien" where a stranger claims the property, the burden is on the claimant as to ownership. Nor is the burden on the landlord under section 2861.

We also deny that "in any event the issue must be raised on the avowry of the landlord by replication of the tenant." For there is no limitation to "any other facts constituting a legal answer." If the facts constituting such legal answer do in fact take issue on the avowry well and good, the burden of proof will be on the landlord, but the facts may not consist in mere negation and the statute does not limit to such. The facts may be entirely new affirmative matter in avoidance and only such.

If they are only such, they absolutely cannot take issue on the avowry. Will appellees still say it "is an issue on the avowry," whether it is or not? We can see no reason, and think appellees have given none, why on the replication of other facts "definite issues should not be arrived at by the usual form of pleading." *Garrett* v. *Carlton,* 65 Miss. 190.

We can see no reason nor can appellees, we believe, why, though the common law is always applied in the statutory rules as to the burden of proof, it must be discarded just at this point and reversed; nor why we should also hold that to be "an issue on an avowry," which is not so.

But, if driven away from this position appellees are still well; because "under the rules of practice at common law the burden was upon the avowant." This conclusion is reached with apparent ease by the simple consideration that "while the allegations of the avow-

ry are not specifically denied by the tenant, they are not confessed or admitted.''· And appellees are half way inclined to contend that ''the replication in the absence of the truth of the allegations of the avowry was a general denial of the indebtedness laid in the avowry.'' This is more in line with the appeal to the statute than to the common law for, certainly we must judge such contention ''wholly independent of any right or rules of pleading and practice existing at common law.''

We regard this contention, which seems to contemplate a written confession or admission in terms in the pleadings, as novel; ''it being a rule, that every pleading is taken to confess such traversable matters, alleged on the other side, as it does not traverse.'' *Thigpen* v. *R. R. Co.,* 32 Miss. 353, 31 Cyc. 207. The case cited in the next paragraph of appellee's brief, *Perkins* v. *Guy,* 55 Miss. 179, is opposed to this contention.

To hold that the plea of recoupment ''as a general denial of the indebtedness laid in the avowry,'' would leave out of view the true principle of recoupment. A plea of recoupment, single and alone, most assuredly contemplates as a necessity for its operation, the existence of an opposing valid claim on which the recoupment is to operate in the way of reduction or satisfaction. If there is nothing to mitigate or reduce or satisfy, the principle of recoupment is without application. The very minute it should become certain in the trial of a case that a plaintiff had no demand, the principle of recoupment would cease activity, so far from the plea being a denial of the indebtedness, we could not have denied the indebtedness and pleaded recoupment in a single plea such as there was here. The one single plea would be a denial and an admission at the same time. Our plea closes with, not a denial of the indebtedness but with ''which damages plaintiffs will recoup against defendants' demand.''

Now as to the effect of the denial of the right to open and close; we admit that *Perkins* v. *Guy,* 55 Miss. 181, sustains the position of appellees that such denial is not ground of reversal; though we think that case could well have been decided on what seems to be the usual rule; that the matter is to be determined from the substance of the pleadings at the beginning of the trial and is not to be varied by jockeying with the pleadings after all the evidence is in. Certainly no fault can be found with the decision as applied to the particular facts of the case, the defendants there having experimented with the court and plaintiffs until all the evidence was in.

But we referred in our first brief to a later case than that, the case of *Porter* v. *Still,* 63 Miss. 361.

We note in 38 Cyc. 1310, the authority referred to by appellees, that in note 57 many of the leading courts in the country hold without qualification that a denial of this right to the party entitled thereto is reversible error. And we further notice that the cases cited in note 66, specially referred to in the opposing brief, are cited to the proposition "that there is no available error where it is apparent that no prejudice resulted," another note on the point will be found in American Ann. Cases, 1912D, 251.

Appellees conclude their discussion on the point by the declaration: "This question has been many times presented to this court, but no cases has ever been reversed because of the denial by the trial court of the request of a party to a suit to open and conclude the argument." This statement is evidently a shot at random. We have carefully examined George's Digest, Brame & Alexander's, Thompson & McWillie's, Bobbs & Merrill's Mississippi Digest and the digest in 29th Mississippi. We made an examination at the time of preparing our first brief and again after reading the above statement in appellees' brief and we find only three cases digested on this point which are: *Thorn-*

*ton* v. *R. R. Co.*, 29 Miss. 143; *Perkins* v. *Guy*, 55 Miss. 179; *Porter* v. *Still*, 63 Miss. 357.

The first case above we consider of no importance on this point as there could be no question of the correctness of the ruling of the trial court. A full discussion on the question of the right to open and close will be found in a very extensive note to *Brunswick Co.* v. *Wiggins* (Ga.), 61 L. R. A. 513. We request special attention to the discussion under the caption "General Principle," on page 513, and to "Conclusion" on page 563.

With reference to the statement that on "pages 103 and 104, it is shown that appellant, J. E. Dodd, was permitted by the court and did actually testify to admissions on the part of Dr. Roseborough as to knowledge of the acreage at the time of the making of the contract," we request the court's particular attention to those pages and the rulings there noted, bearing in mind that Dr. Roseborough on the trial maintained that he did not know the acreage at the time of the contract, and the purpose of the evidence then being offered was to show that it was taken as conceded at that meeting to which Dr. Roseborough was a party that Dr. Roseborough had represented to plaintiff that he had six hundred acres in cultivation.

The first branch of appellees' argument to sustain the correctness of instruction number 6 is in substance this: "It is not necessary to believe that the lessor intentionally misled plaintiffs" means the same thing as "it must be established by proof that is clear and satisfactory that the representation was made with the intention of deceiving and defrauding."

We doubt whether a jury could ever be brought so to think. We do not think the instructions are equal to each other in meaning and really thought we had obtained and instruction excluding any necessity of showing an actual intent to defraud. We did not conceive that we were using "diplomatic language" and that an

actual corrupt intent was hidden in that instruction, for our great purpose was to eliminate that thing; and now we find to our sorrow, if appellees are correct, that it was nevertheless there but in gentler and more diplomatic language.

Appellees say "the instructions announce in substance the same proposition of law;" and that their instruction "was accurate and comprehensive in substance" etc. So must our instruction, since appellees say it announces the same proposition, be accurate in substance too. Yet appellees say "any instruction which undertakes to define actionable fraud, which omits the element of a fraudulent intent is incomplete and inaccurate." Well our instruction number 2 we may fairly say, "omits the element of a fraudulent intent is incomplete and inaccurate;" omits the element of any actual corrupt intent and hence must be inaccurate. So there you are. The instruction is accurate or inaccurate according to the exigencies of the argument.

*Shands & Montgomery,* for appellees.

Appellants' first assignment of error is that the trial court erred in overruling plaintiffs' (appellants') motion to open and close the case.

The trial court was correct in this ruling. The lien placed upon agricultural products in favor of the landlord to secure payment of the rent, is a creature of the statute law in Mississippi, and did not exist at common law. The remedy for the enforcement of the lien is likewise statutory, and the landlord in proceedings to enforce his lien, must follow substantially the procedure provided for in the statute. The lien, as well as the rules of pleading and practice for its enforcement, constitute a legislative scheme, new in its details, and wholly independent of any rights or rules of pleading and practice existing at common law. The

legislature has seen fit to provide in our statutes, that in proceedings to enforce a landlord's lien, the burden of proof shall be upon the avowant, the landlord; and in casting this burden upon the landlord, it provided that the landlord should have the right to open and conclude the argument.

Section 2864 Code of 1906. In this case, under the statute, the plaintiffs or tenants had the right under sections 2863 and 2864 to file their replication to the landlord's or defendants' avowry, in the form prescribed by either of said sections, or to unite both forms when applicable to the particular case, or "he may reply any other facts constituting a legal answer." The statute undertakes to prescribe and limit the defenses which are allowable in actions by landlords for the enforcement of liens, and no defense can be interposed which does not fairly fall within the spirit of the statute.

In this case, the plaintiffs or tenants elected to recoup against the demand of the landlord's assignees, damages alleged to have been sustained by them on account of fraud practiced upon them by the landlord in the making of the contract. This defense could only be interposed by virtue of the provision in the statute that the tenant "may reply any other facts constituting a legal answer," and in the absence of this provision, such a defense would not be allowable. That is to say, the legislative scheme was to raise the issue on the avowry of the landlord, by replication by the tenant, either in the form prescribed by section 2863 or section 2864 or a replication embracing "any other facts constituting a legal answer," but in any event, the issue must be raised on the avowry of the landlord, by replication of the tenant; and the burden is thereby cast under the statute upon the landlord, with the right of the landlord to open and conclude the argument. It is clear that it was the intent of the legislature to place the issue in actions instituted to enforce the lien, on the

avowry of the landlord, whether raised by replication in the form prescribed by section 2863 or in the form prescribed by section 2864, or by a replication setting up "any other facts constituting a legal answer," under section 2864. In either case, the issue must be on the avowry, with the burden of proof upon the avowant or landlord, and the consequent right to open and conclude the argument.

But aside from the statutory provision as to the burden of proof and the right of the landlord to open and conclude the argument, under the rules of practice at common law, the burden was upon the avowant in this case, and consequently the right to open and conclude the argument. *Porter* v. *Still,* 63 Miss. 357. See 38 Cyc., p. 1304; *Perkins* v. *Guy,* 55 Miss. 181; Notes 65 and 66, 38 Cyc., p. 1310.

We shall next consider appellant's second assignment of error, to wit: On excluding perfectly competent evidence on behalf of plaintiffs. The court properly sustained the objection of the landlord to evidence to support the claim for damages as to the number of mules purchased, and the price paid for them for the reasons that the appellants still had the mules, and obviously could not keep the mules and charge the landlord with the price of them; and for the further reason that the damages were too remote, and not such damages as could have been in the contemplation of the parties to the contract. For the same reasons the court properly excluded the evidence offered in support of the claim for damages on account of price paid for wagons, stock and tools. The damages alleged on account of moving mules from Lexington were manifestly too remote to be allowed.

The claim for repairing houses could not be allowed, for the reason that it is not shown that the landlord agreed to make any repairs, nor warranted the condition of the tenant houses in any way. The same can be said of the claim for damages for cutting ditches and

building bridges. The advancing of money to negroes Xmas long before even a crop was pitched was manifestly not a proper claim.

They could not recover the anticipated profits on the alleged difference in the actual acreage in cultivation on the plantation, and what was fraudulently represented to them to be in cultivation for these reasons; the anticipated profits and crops was purely speculative and not susceptible of proof with reasonable certainty; and secondly, obviously the true measure of damages would be difference in the rental value of the place as fraudulently represented to them in reference to the number of acres in cultivation and the rental value of the place as it actually existed. *Estell* v. *Myers*, 54 Miss. 174.

The next assignment of error complains of the giving by the trial court of instructions numbers 6 and 3 for the defendants below. This instruction number 6 is in the following language: ''The court charges the jury for the defendants, that fraud is never presumed, but must be established by proof that is clear and satisfactory by the party alleging it.

And unless McNeer & Dodd satisfy your minds by a preponderance of the evidence that before the written rent contract in evidence was executed by the parties, that Dr. Roseborough either in person or through his agent W. B. Roseborough represented to McNeer & Dodd that there were six hundred acres of land fit and suitable for cultivation on the leased premises; that such representation was false; that it was made by said Roseborough with knowledge that it was false or made in reckless disregard of whether it was true or false; and that it was made with the intention of deceiving and defrauding McNeer & Dodd, and that McNeer & Dodd, acted on such representations and believed them to be true, and did not rely on their own knowledge or investigation, you are instructed to find

for the defendants in the sum of three thousand dollars with six per cent, interest from November 15, 1914.''

Appellant's first criticism of this instruction is that it conflicts with instruction number 2 for the appellants. While instruction number 2 for the appellants does announce in the outset ''that it is not necessary for the jury to believe from the evidence, in order to find for plaintiffs, that Dr. J. L. Roseborough or his agent W. B. Roseborough, intentionally misled plaintiffs as to the acreage of the land in cultivation,'' this statement in the instruction is qualified by the further explanation that ''if Dr. Roseborough or his agent did make representations as to the actual acreage in cultivation which were materially untrue, that plaintiffs did believe said statements of the said Roseborough or his agent, and relied on the same in good faith, not knowing any better,'' etc. Taking instruction number 2 for the plaintiff as a whole and it announces the same principle that instruction number 6 for the defendants announces, perhaps in more diplomatic language.

If there is any conflict, however, the error lies in the instruction granted the appellants, and cannot be taken advantage of by them on appeal. ''The rule is well settled in most jurisdictions that an intent to deceive— or, as is commonly expressed, a fraudulent intent—is an essential element is every actionable fraud, and that to support an action of deceit the existence of this intent must in some way be made manifest.'' 20 Cyc., p. 35, paragraph 6, and almost innumerable cases cited under note 40. *March* v. *Falker,* 40 N. Y. 562; *Ansbacher* v. *Pfeiffer,* 13 N. Y. Supp. 418, 59 Hun. 624; *Huffstetler* v. *Our Home Life Ins. Co.* (Fla.), 65, So. 1; *Allen* v. *United Zinc Co.,* 60 So. 182, 9 Fla. —; *Geqin* v. *Shields,* 52 So. (Ala.), 887; *Dormitzer* v. *Greve,* 3 Mo. App. 592; *Rolfes* v. *Russell,* 5 Or. 400; *Inderlied* v. *Honeywell,* 84 N. Y. Supp. 333, 88 App. Div. 144; *The Nurmannia* (U. S.), 62 Fed. 469; *Union P. R. R. Co.* v. *Barnes,* 64 Fed. 80, 12 C. C. A. 48, 15 Me. —, 3

Shep. 225, 227; *Bell* v. *Morley,* 223 Fed. 628, 139 C. C. A. 174; *Butler* v. *Watkins,* 13 Wall. 456, 20 Law. Ed. 629.

It is absolutely essential in an action of deceit that the false representations shall be made for the purpose of being relied upon and acted upon by the person to whom it was made; and representations made for a different purpose or intended for persons other than plaintiffs, cannot be made the basis of an action for deceit. 20 Cyc., p. 35, paragraph 6; *Henry* v. *Dennis,* 95 Me. 24, 49 Atl. 58, 85 A. S. R. 365; *Nash* v. *Minnesota Title Ins. Co.,* 159 Mass. 437, 34 N. E. 625; *Hunnewell* v. *Duxbury,* 154 Mass. 286, 28 N. E. 267, 13 L. R. A. 733; *Fogg* v. *Pew,* 10 Gray 409, 71 A. D. 662; *McLure* v. *Campbell,* 148 Mo. 96, 49 S. W. ——; *Brackett* v. *Griswold,* 112 N. Y. 454, 20 N. E. 376; *McAleer* v. *McMurray,* 58 Pa. State 126; *Butterfield* v. *Barber,* 20 R. I. 99, 37 Atl. 532.

In none of these cases in actions for deceit, has any court ever intimated that an action of deceit can be maintained without proof of false representations made with knowledge of their falsity, or the legal equivalent thereof, and with intent to deceive; but in such cases, the court has simply supplied these elements from the peculiar facts in those cases by imputation. The scienter must be shown in all cases, even though it must be supplied by imputation. Imputed knowledge and intent is just as binding on a party in an action of fraud as actual knowledge and intent. *Vincent* v. *Corbett,* 94 Miss. 46; *Chathan Furniture Co.* v. *Moffatt,* 147 Mass. 403, 18 N. E. 168, 9 Am. St. Rep. 727.

We wish to direct the attention of the court to the further fact, that instruction number 6 for the defendants so severely criticised by counsel for appellants, literally tracks the language of plaintiffs' replication upon which they made their fight.

So under the facts as construed by counsel for appellants and ourselves, if there was any fraudulent rep-

resentation made, it did involve moral turpitude on the part of the Roseboroughs. That was the issue made on the facts, and there is never any use in begging the issue in the instructions. Indeed, we think it may be safely asserted that while there may be moral fraud which is not actionable, there is no actionable fraud which to some extent does not involve moral turpitude. 20 Cyc., p. 39, note. 53.

Appellants say that the third instruction of the defendants should not have been given. The court had excluded all evidence of the items of damage set up in this instruction, and the instruction naturally followed the action of the court in excluding the evidence. If the court was correct in excluding the evidence of these items of damage, the instruction was properly given. We have discussed the action of the court in its rulings on the evidence elsewhere in this brief, and shall not repeat what we have said on that subject.

Etheridge, J., delivered the opinion of the court.

The appellees sued out a distress for rent against appellants in the circuit court of Panola county for the year 1914, and seized ninety bales of cotton. This attachment was founded on a contract between J. L. Roseborough and the appellants, by which the appellants leased from Roseborough a plantation in Quitman county for the years 1914, 1915, 1916, 1917, and 1918 for the sum of three thousand dollars per year. Appellants replevied the cotton, and the appellees, as assignees of the rent contract, filed an avowry under the chapter on Landlord and Tenant alleging that they had a landlord's lien upon said cotton for the term beginning January 1, 1914, and ending December 31, 1918, and at the time of the said seizure the appellants were indebted to them in the sum of three thousand dollars, and that they had a landlord's lien for said amount, and with this plea filed a copy of the lease

contract as an exhibit.   Thereupon the plaintiffs for
replication filed a plea of recoupment, alleging that
in leasing said lands it was the purpose of the plain-
tiff to employ negro tenants and laborers sufficient to
farm the land, and it was necessary to furnish sup-
plies, stock, seed, tools, etc., with which to farm said
land in cotton and that this purpose was known to J.
L. Roseborough at the time of making the said lease
contract, and that, preceding the execution of the said
contract, and while the negotiations were pending about
said lease, and on the day of the execution of the lease,
in order to induce the plaintiffs to enter the said con-
tract, the said Roseborough and his agents positively
stated to the plaintiffs that there was then in said land
six hundred acres of cleared land fit, suitable, and
ready for cultivation, which would require thirty mules
to cultivate; that Roseborough and his agents were
familiar with the lands, and intended for such state-
ments and representations to be believed by the plain-
tiffs; and that neither of the plaintiffs were familiar
with the plantation, and had only seen it for about two
hours a few days before; and that they relied wholly
on the representations of Roseborough and his agents
for information, which fact Roseborough well knew;
and that Roseborough, knowing of their ignorance and
lack of knowledge with respect thereto, made said rep-
resentations; and that the plaintiffs relied thereon,
and, so relying, secured twenty-six squads of negroes
to work said lands in the year 1914, and purchased in
the market twenty-one head of mules and horses in the
expense of two thousand two hundred dollars; and
that they already had ten head of mules, and that said
amount of stock would be necessary to cultivate six
hundred acres; and that they procured foodstuff for
the live stock at an expense of one thousand two hun-
dred dollars, and farming tools, etc., to the extent of
five hundred dollars, spent five hundred dollars build-
ing roads and drains, and three hundred dollars in

113 Miss.—40

clearing up land; and that they furnished their tenants
with supplies to the amount of three thousand dollars;
and that all of said expenditures were necessary under
the circumstances for the cultivation of said farm if
it contained six hundred acres; but that in reality at
said time there were only about three hundred acres of
land cleared and fit for cultivation, but, relying on said
representations, they believed there were six hundred
acres; and that the lands were so situated in irregular
bodies that they could not determine from a brief in-
spection the amount in actual cultivation, but when
they broke the land in the spring of the year, they
found that it was short, and they had to discharge part
of their tenants, and had to retain more than was
needed both of stock and tenants to cultivate the prem-
ises actually open and suitable for cultivation; that
they did all they could to place their tenants elsewhere,
and did all they could to secure other lands and to dis-
pose of all the stock in excess of what was necessary to
cultivate three hundred and eight acres in actual culti-
vation, and by reason of said facts they were damaged
in the sum equal to, or exceeding, the rent contract.
Issue were joined on this plea, and thereupon the plain-
tiffs moved the court to allow them to have the open-
ing and closing both in introducing the evidence and in
presenting the argument, which motion was overruled
by the court. Defendants thereupon put in evidence
the contract, and introduced M. P. Moore, who identi-
fied the lease contract, and testified that nothing had
been paid upon the contract for the year 1914. There-
upon defendants rested. The appellants (plaintiffs)
offered evidence to prove the allegations of their plea
set forth, and each testified that the agent of Rose-
borough, the original landlord, made the representa-
tions contained in the plea, and that he stated, in show-
ing them over the plantation, that there was one hun-
dred and fifty acres of the land which he represented
would make a bale of cotton per acre, three hundred

acres that would make a half bale per acre, and that one-fourth of the land was, at the time of making the contract (which was in the fall of 1913), planted in corn which could be cultivated in cotton. Plaintiffs offered to prove that, after discovering the land was short as to the six hundred acres (but only contained about three hundred and eight acres), they went to Dr. Roseborough, the owner, and complained that the land did not contain the six hundred acres which had been represented to them that it did contain, and that Dr. Roseborough stated that it did contain six hundred acres, and that some compromise was discussed and propositions of compromise made during this interview, but the court excluded these statements on the theory that they were made pending a compromise of differences. The court also excluded much of the evidence offered to show loss on the part of the plaintiff, excluded all the evidence of the expense of repairs, and of building roads and drains, and excluded proof that they would not have made the said drains an incurred the expense if they had known that there was less acreage than four hundred acres, and declined to permit plaintiffs to prove the cost of the mules purchased by them and the price at which they were sold, and prove that they were sold at the best price that could be obtained and at a loss to the plaintiffs; also excluded proof that the plaintiffs went to Norfleet and complained of the shortage of the land, and that Norfleet stated to them to go ahead and stay on the place, and that the matter would be adjusted properly, and proof that they went to Senatobia, where Norfleet, Gabbert, Moore, Dr. Roseborough, Dodd, and McNeer were present, and made complaint to them. The court declined to permit them to state what statements were made at that time with reference to this matter, and refused to permit them to prove what was done about the matter at that time, and refused to permit them to

prove that Dr. Roseborough at that meeting made admissions as to the shortage of the land.

At the conclusion of the evidence the court instructed the jury on behalf of the plaintiffs, and in the second instruction given for the plaintiffs instructed the jury that it was not necessary for the jury to believe from the evidence, in order to find for the plaintiffs, that Dr. Roseborough or his agent intentionally misled the plaintiffs as to the acreage in cultivation at the time of the lease, but that it was only necessary for the jury to believe that Roseborough or his agents made representations as to the actual acreage in cultivation which were materially untrue, and that if plaintiffs believed such statement, if one was made, and relied on it in good faith, and was materially damaged, and if the plaintiff was misled as to the actual acreage, the jury should find such damage as the evidence showed to exist on account of such false representations as to the actual acreage of the land.

In the sixth instruction given for the defendant the court charged the jury for the defendant that plaintiffs must satisfy the jury's minds by a preponderance of the evidence that before the execution of the contract Dr. Roseborough, in person or through agent, represented that there were six hundred acres of land fit and suitable for cultivation on the leased premises, and that such representation was false, and that it was made by Roseborough with knowledge that it was false, or made in reckless disregard of whether it was true or false; and that it was made with the intention of deceiving and defrauding McNeer & Dodd, and that McNeer and Dodd acted on such representations and believed them to be true, and did not rely upon their own knowledge or investigation, and unless the jury did so believe, they should find for the defendant in the sum of three thousand dollars, with interest at six per cent.

In the third instruction given for the defendants the court instructed the jury that they could not allow plaintiffs by way of recoupment for or on account of any of the following items asked for in said plea: Price paid for mules and horses, two thousand, two hundred dollars; amount paid for farming tools, plows, gear, wagons, necessary improvements, repairing of tenant houses, roads and drains built, five hundred dollars; amount paid for clearing land, three hundred dollars; salary of J. E. Dodd, eight hundred dollars.

We think it was reversible error to grant the sixth instruction for the defendant, which told the jury that the representations made, or claimed to have been made, must be made with the intention of deceiving and defrauding McNeer and Dodd. Under this instruction the jury may have believed that Roseborough, either in person or by agent, made the statement that the place did contain six hundred acres, and that, notwithstanding he may have made such statement, he may not have made it for the purpose of deceiving and defrauding McNeer and Dodd. It was in direct conflict with the instruction given for the plaintiff as to this feature of the case, and it does not contain an accurate statement of the law. To constitute fraud it is unnecessary. that a statement be made with the intention of deceiving, if it is a statement of fact, or a statement purporting to be a fact, but not true as a matter of fact. It has all the effect, so far as inducing the contract is concerned, as it would have had if made deliberately for the purpose of deceiving.

In *Vincent* v. *Corbett,* 94 Miss. 46, 47 So. 641, 21 L. R. A. (N. S.) 85, the court in the fourth syllabus says:

"A statement by an owner of a tract of land that a designated number of acres thereof was cleared is an averment of a fact, and not the expression of an opinion, and, if false, an action of deceit can be predicated of it."

In the fifth syllabus the court says:

"Proof of a false statement by defendant touching the area of cleared land in a tract he was seeking to sell, materially overstating the number of acres, and that plaintiff bought on the faith thereof, makes out a *prima-facie* case against the vendor in an action of deceit by the vendee, although plaintiff gave defendant credit for an honest mistake."

In the case of *Estell* v. *Myers,* 54 Miss. 174, it was held that a false statement with reference to the safety of a place from overflow was an inducement to the vendee to purchase, and that the vendee may recoup in a suit to enforce the security for the purchase money to the extent of his injury, and that misrepresentations, even if they were made honestly and the plaintiff did not know they were false, or were not made with fraudulent intent, would enable the party wronged by such representations to prove damages by recoupment. This case is an instructive case, and shows that many of the rulings on the evidence were erroneous in the present case, and shows that the court was in error in excluding from the consideration of the jury evidence of items of damage in the plea of recoupment. Of course the jury are to judge as to the necessity and reasonableness of expenditures made, but should have such information, coupled with other proof, as will enable them to determine the extent of the damage of the party in case they find facts favorable to the plaintiff. See, also, *Rimer* v. *Dugan,* 39 Miss. 477, 77 Am. Dec. 687; *Davidson* v. *Moss,* 5 How. 673; *Parham* v. *Randolph,* 4 How. 435, 35 Am. Dec. 403.

It was error for the court to exclude the evidence as to a statement of fact made by Dr. Roseborough at the time of the negotiations with reference to adjustment of their differences. While an offer of compromise cannot be shown as being an admission of the party making the offer, still if the party makes a statement of fact, as a fact, it may be proved as an admission even

though it was made during the discussion of the compromise. The rule is stated in Encyclopedia of Evidence, vol. 1, p. 599, as follows:

"Admission of Fact Competent.—While offers of compromise cannot be proved as admissions, a distinct admission of a fact in the course of negotiations therefor is held admissible" (citing, among other authorities, *Grubbs* v. *Nye,* 13 Smedes & M. 443; *Garner* v. *Myrick,* 30 Miss. 448, which fully sustain the rule stated).

In reference to the errors assigned on the right to open and close the proof and the argument, it seems that the trial court proceeded under the theory that under section 2864 of the Code the burden was on the landlord in the case. The concluding clause of 2864 reads as follows:

"And on the trial of an issue on an avowry, the burden of proof shall be on the avowant, the landlord, and he shall have the right to open and conclude the argument."

As we understand it, this means that when an issue has been tendered on the avowry, denying the allegation of the avowry, then the burden is on the landlord or avowant; and, under the pleading, if either the relation of landlord and tenant, or the amount of the contract, or the amount of supplies furnished, is denied, then the landlord must assume the burden and prove his contention; but if the relation be admitted, and the amount of the rent contract for supplies furnished is not denied, no issue is made on the avowry. If the plaintiff undertakes to confess and avoid by an affirmative plea setting up new matter, and issue is tendered on this plea, then the burden shifts and the plaintiff assumes the burden, and has the right of opening and concluding the evidence and the argument. In the present case the pleadings do not take issue on the amount agreed upon in the contract, nor undertake to reduce or overcome the amount agreed to be paid by an affirmative plea setting forth facts not in denial of the plea of

avowry, but setting up new matter upon which issue was tendered, and upon which the whole case was tried, and the instructions given the jury placed the burden upon the plaintiff to prove the issues of this plea. This question is settled in favor of the appellant by the case of *Porter* v. *Still,* 63 Miss. 357, which is quoted with approval in the later case of *Timberlake* v. *Thayer,* 16 So. 878. The rule, in the case in 63 Miss. 357, *supra,* is stated as follows:

"The party on whom the burden of proof lies, whether plaintiff or defendant, is entitled to open and conclude the argument before the jury. And this is not a mere privilege, but a right determined by law. If there be several issues, and the plaintiff holds the affirmative of any one of them, he is entitled to open and conclude. The party on whom the burden of proof in any cause rests may be determined by considering which would succeed if no evidence were offered by either side, and by examining what would be the effect of striking out of the record the allegation to be proved. The onus must be on the party who, under such tests, would fail in the suit."

For the errors indicated, the case is reversed and remanded.

*Reversed and remanded.*