REED, et al. *v.* CHARPING.

In Banc. June 13, 1949.

No. 37100.   (41 So. (2d) 11)

(1)

Dent & Ward, Means Johnston, and Forrest B. Jackson, for appellants.

4

Clements & Clements, for appellee.

8

**Hall, J.**

Appellants brought suit against appellee for the recovery of damages for fraud and deceit in connection with representations alleged to have been made by appellee in a sale to appellants of a large tract of land situated in Issaquena County. The suit also involved certain equitable rights and remedies claimed by appellants which gave chancery jurisdiction. The Chancellor sustained a general demurrer to the bill of complaint and upon a former appeal his action was reversed and the cause remanded. Reed et al. v. Charping, 201 Miss. 477, 29 So. (2d) 271.

Upon remand to the lower court an amendment was filed to the original bill of complaint and the cause was tried upon the original bill and amendment, answer thereto, and cross-bill of appellee against appellants, amended cross-bill, answers thereto, and oral and documentary evidence. A decree was entered finally dismissing the original and amended bills, and sustaining the cross-bill

as to the balance alleged to be due on the purchase price of the land, and also granting a recovery over and above that amount in connection with certain other transactions between the parties regarding personal property, from which action this appeal is prosecuted.

We approach a decision in this case in full recognition of the well-established rule in this state that ██ █ a decree of a chancellor will not be reversed unless it is manifestly erroneous, and, while it is our duty to affirm if there is sufficient substantial evidence to support a chancellor's finding, it is equally our duty to reverse in the absence of such support where the overwhelming proof stands as a barrier against the affirmance of his decree.

The greater portion of the relief sought by appellants is for the recovery of damages for fraud and deceit founded upon the charge that, as a basis to induce them to purchase the lands in question from appellee, he represented to them as a fact that there were not less than five thousand acres of cultivatable land within the protection of the levee of the Mississippi River, that appellants relied upon this representation and were deceived thereby, and as a consequence thereof were induced to purchase the lands; that the said representation was false and untrue and so known to the appellee; that in fact there were only about 3500 cultivatable acres within the protection of the levee, but this was not discovered by appellants until after they had paid the greater portion of the purchase price and had expended many thousands of dollars in making improvements thereon such as the construction of a new cotton gin, repair and renovation of tenant houses, and the construction of new tenant houses, making a suit for rescission impractical.

The governing legal principles are well settled by decisions of this Court. In Vincent v. Corbitt, 94 Miss. 46, 47 So. 641, 21 L. R. A., N. S., 85, it was held that a statement by an owner of a tract of land that a designated number of acres thereof was cleared is an averment of a

fact and not the expression of an opinion, and, if false, an action of deceit can be predicated thereon. Numerous authorities are cited in the opinion to sustain the holding therein. That holding was reaffirmed in McNeer & Dodd v. Norfleet, 113 Miss. 611, 74 So. 577, Ann. Cas. 1918E, 436, where additional authorities on the subject are collated.

In Nash Mississippi Valley Motor Co. v. Childress, 156 Miss. 157, 163, 125 So. 708, 709, this Court said: "A purchaser has a right to rely upon the representations of a seller as to facts within the latter's knowledge, and the seller cannot escape responsibility by showing that the purchaser upon inquiry, might have ascertained that such representations were not true. Contributory negligence is not a defense to an action based on fraud. If a false statement is made by one who may be fairly assumed to know what he is talking about, it may be accepted as true, without question and without inquiry, although the means of correct information are in reach." Numerous authorities are cited to sustain this announcement of these principles, and they were applied in the more recent case of H. D. Sojourner & Co. v. Joseph, 186 Miss. 755, 191 So. 418.

The record here shows that appellee listed his lands with a real estate agent for sale. This agent contacted the appellants as prospective purchasers and represented to them that the entire tract, consisting of fifteen plantations, contained 5936 acres in cultivation, protected by the levee, and about 8438 acres of other land. This representation is not denied by the agent. He testified that whatever he told appellants as to the acreage was information given him by appellee. In subsequent conferences leading up to a final closing of the deal by written contract it is shown by the overwhelming evidence that appellee represented that he had between 5500 and 6000 cultivatable acres within the protection of the levee. A price was discussed and tentatively agreed upon based upon a guarantee of 5500 cultivatable protected acres,

with a provision for reduction in price at the rate of $50.00 per acre for any shortage in amount, but appellee demurred to such a guarantee with provision for reduction, and in the final conference when the deal was concluded, he represented that he knew he had as much as 5000 cultivatable acres so protected and he reduced his price $25,000.00, being a five-hundred-acre reduction at a value of $50.00 per acre, and, upon such reduction in price and representation as to acreage, the deal was closed. There is no question from the record here that the amount of protected cultivatable acreage was the moving factor in the deal, and that appellants relied upon appellee's said representation. This was established by the testimony of disinterested witnesses who are men of high standing and unquestioned veracity. While appellee made a gesture at denial of his representations, he contradicted himself on numerous points in his testimony, there being a substantial variance between what he said when unexpectedly called as an adverse witness for cross-examination and what he later said on direct examination as a witness in his own behalf. He offered no proof as to the amount of cultivatable protected acreage in the deal and maintained that he had no idea as to the quantity thereof, yet he had owned and cultivated the land for many years, had no doubt participated in government benefits on a basis of cultivatable acreage, and was a member of the board of supervisors of his county charged not only with the duty of rendering his own cultivatable acreage for assessment but also with the duty of examining, equalizing and approving the land assessment rolls and vouching for their accuracy. The decree denying relief on this feature of the case is based solely upon the unsupported testimony of appellee, which, as we have pointed out, is not only unsubstantial in view of his conflicting statements, but is overwhelmingly disputed by other witnesses, both interested and disinterested. We are, therefore, of the unanimous opinion that the decree of the lower court denying recovery of damages for the misrep-

resentation in the amount of cultivatable protected acreage is manifestly wrong and must be reversed.

██ ██ We are unable to render a judgment here for the amount of appellants' damages on the foregoing issue for the reason that we cannot calculate the amount thereof with sufficient certainty. The appellants offered two witnesses, both engineers with the United States Corps of Engineers, War Department, assigned to the Mississippi River area at Vicksburg. They compiled and offered in evidence a composite map of the lands in question from aerial photographs taken from the official files of the United States Engineers Office at Vicksburg, and one of these engineers calculated the cultivatable acreage within the protection of the levee to be 3529.6 acres, while the other calculated it to be 3569.1 acres. Appellee's objection to these maps was sustained by the trial court, it having been shown by cross-examination that there is frequently a slight distortion in aerial photographs which may make a variance of about five per cent in accuracy unless they are "ground-checked," and these witnesses were unable to testify positively that the photographs had been so checked. The appellee offered no evidence whatever as to the acreage involved, but it is clearly apparent from the record that there is a material and substantial shortage. Therefore, the cause is remanded to the trial court for the taking of further testimony upon the sole question as to the amount of cultivatable land within the protection of the levee, and for a determination of the amount of damages which appellants have sustained as a consequence of the misrepresentation aforesaid.

██ ██ The appellants also claimed damages for misrepresentation by appellee as to the amount of and which is subject to seep water coming through the levee when the river is at a high stage, and they offered some evidence that about 580 acres were subject to such damage; on the contrary, the appellee testified, and was supported by disinterested people residing upon adjacent lands,

that there is no seep water through the levee at this place. The evidence on this feature amply supports the decree of the chancellor in denying damages because of the alleged seep water.

The appellants also claimed $6,000 damages because of the loss of an oat crop alleged to have been damaged by seep water. Their evidence to support this claim was weak, and we think was overwhelmed by the evidence of other parties who lived on adjacent lands and observed the oat crop and testified that, while the oats did not profitably mature, this was because of backwater from Steele's Bayou and because of premature grazing of cattle thereon for three or four months. It was furthermore shown by government records of the river gauge that, during the period of cultivation and maturity of the oat crop, the river did not at any time rise above the level of the land in question, which negatives the contention that the oat crop was damaged by the seepage of water through the levee; and we find no error in the action of the chancellor in denying this claim.

The appellants also claimed damages for an alleged breach of an obligation on the part of appellee to locate for them the corners and lines of the lands in question. Specifically, they claim that the appellee could not comply with this obligation without having the land surveyed, which has not been done, and that the cost of such a survey would be around $6,300.00. Appellee and his plantation manager, who after the sale remained for several months in the employment of appellants, testified that the manager was familiar with all the lines and corners and pointed them out to appellants. This was not substantially disputed. The contract of sale did not obligate appellee to have the lands surveyed, and we are of the opinion that what he did, through his manager, was a sufficient compliance with his obligation, and that the chancellor was correct in denying recovery on this item.

The appellants claim lastly that the chancellor erred in his findings with reference to numerous items of per-.

sonal property and his award of damages in favor of appellee, on the cross-bill, in the amount of $3698.80. After a careful review of all the evidence pertaining to these items we find that the chancellor was correct on a large portion of the award of damages, and we cannot say with assurance that he was manifestly wrong on the remainder.

The decree is therefore affirmed in part, and is reversed on the item of damages for misrepresentation and deceit as to the amount of cultivatable land within the protection of the levee, and is remanded to the trial court for a proper award of damages thereon.

Affirmed in part, and in part reversed and remanded.

**Montgomery, J.,** took no part in the consideration and decision of this case.