GARDNER, et al. *v.* STATE OF MISSISSIPPI, et al.

No. 40992          January 26, 1959          108 So. 2d 592

*W. B. Fontaine, Swep S. Taylor, Jr.,* Jackson; *John K. Keys,* Collins; *Victor J. Ford,* Raleigh, for appellants.

*Wells, Thomas & Wells, Martha Gerald, Matthew Harper, Asst. Atty. Gen.,* Jackson; *L. D. Pittman,* Raleigh; *Alexander & Alexander,* Jackson; *O. B. Triplett, Jr.,* Forest, for appellees.

124

APPELLANTS IN REPLY.

APPELLEES AND CROSS-APPELLANTS IN RE-PLY.

GILLESPIE, J.

██ ██ Appellants, being the heirs at law of D. A. Wilkinson, deceased, and those claiming under them, filed their bill to confirm title to the surface rights and a one-fourth undivided interest in and to the oil, gas and other minerals to 160 acres of land in Smith County. The defendants filed a cross-bill seeking to have the title to their respective interests in said lands, not necessary to here state, confirmed and to cancel all claims of the appellants

as clouds on their title. The chancellor dismissed the original bill, adjudged that the appellants had no interest in the lands or minerals and confirmed title in the appellees as their respective interests appear in the final decree.

D. A. Wilkinson owned the land and a one-fourth undivided interest in the minerals on June 16, 1944, on which date he conveyed to Robert York, whose successors in title are among the appellees, an undivided one-fourth interest in the oil, gas and other minerals in said 160 acres of land here in dispute and other lands, said deed purporting to convey 60 mineral acres under other lands, or a total of 100 mineral acres.

On August 17, 1945, Robert York, grantee in said deed, filed suit in the District Court of the United States, Southern District of Mississippi, charging that in order to induce and persuade the said York to purchase the said 100 acres of minerals, the defendant, D. A. Wilkinson, fraudulently represented to York that he, Wilkinson, was the owner of said lands and minerals in fee simple, and with intent to cheat and defraud York, the said Wilkinson tendered to York a forged certificate of title purportedly certified to by a lawyer that the title to said 100 mineral acres was good in D. A. Wilkinson; that relying upon the certificate of title and false representations of the said Wilkinson, York paid Wilkinson $1500 for said 100 mineral acres and a deed purporting to convey said interest was executed and delivered to York. The complaint further charged that instead of obtaining 100 mineral acres, the said York "had only obtained a good and merchantable title to 40 mineral acres," (being an undivided one-fourth interest in the minerals under the lands in dispute in this suit); that as to the 60 mineral acres under other lands than that involved in this suit, the said Wilkinson had already conveyed all of the minerals to other persons. York alleged that he was damaged to the extent of $1800 actual damages and $5000 punitive

damages. Wilkinson was duly summoned to appear in the federal court to answer the suit of the said York but defaulted and the judgment of the federal court was in the following words:

## "DEFAULT JUDGMENT

"This cause came on to be heard upon the complaint of the plaintiff and the court finding that the defendant, D. A. Wilkinson, has been personally served with summons in this cause in the manner and for the time required by law, and that he has wholly failed to answer or to appear herein but has in all things made default; and it further appearing that this court has full jurisdiction of the parties and of the subject matter of said action; and, from the evidence offered, that the plaintiff is entitled to the following judgment:

"IT IS ORDERED AND ADJUDGED That the plaintiff, Robert York, do have and recover from the defendant, D. A. Wilkinson, the sum of $1800.00 actual damages sustained by the plaintiff together with $700.00 punitive damages for the wilful wrongs and injuries inflected upon the plaintiff by said defendant, being the aggregate sum of $2500.00 together with interest thereon at the legal rate from this date upon paid and all costs of this action, for all of which let execution and other proper process issue.

"ORDERED AND ADJUDGED, this 5th day of November, 1945."

This judgment obtained by York against Wilkinson was enrolled in the circuit clerk's office of Smith County and nothing was paid thereon. When the present suit was filed on July 28, 1957, nearly twelve years after the rendition of the judgment in federal court and many years after said judgment had been barred by the statute of limitations, the complainants tendered into the registry of the court a sum sufficient to pay said judgment.

On June 18, 1945, D. A. Wilkinson and wife executed a deed of trust to R. S. Tullos, trustee, to secure an indebtedness due the Bank of Raleigh of $300.00 and other money that might be advanced, conveying in trust the land involved in this suit. This deed of trust was duly recorded. D. A. Wilkinson thereafter died on July 9, 1946. On August 31, 1946, the said deed of trust was foreclosed and the land was purchased at the foreclosure sale by F. S. Huff. On November 2, 1946, F. S. Huff conveyed said lands to Charles E. Strahan, one of the appellees in the present suit, who was adjudged by the court below to be the owner of the surface rights to the land.

As to the one-fourth undivided interest in and to the minerals under the lands involved in this case, appellants base their claim thereto on the contention that the filing of the suit in federal court by Robert York against D. A. Wilkinson was an equitable rescission of the mineral deed and in equity revested the title to the undivided one-fourth interest in the minerals under the subject lands in D. A. Wilkinson.

Briefly stated, appellants contend that since York sued Wilkinson for $1800 plus punitive damages and recovered $1800 actual damages and $700 punitive damages, it is not consonant with equity that York recover more than the entire purchase price agreed upon for the entire 100 mineral acres and at the same time retain title to a part of the property involved in the transaction; that the equitable effect of the suit was to revest in Wilkinson the 40 mineral acres (undivided one-fourth interest under the 160 acres of land involved in this suit) good title to which was conveyed under the deed from Wilkinson to York.

Under appellants' first contention there are two points of inquiry: (1) Whether the suit by York against Wilkinson was one for rescission or one based on fraud and deceit, and (2) if the latter, does the fact that York sued for and recovered more than the entire purchase price

have the equitable effect of revesting in Wilkinson the undivided one-fourth mineral interest here involved.

York's federal court suit against Wilkinson was not one for rescission. To have maintained an action for rescission, York would have been required to return, or offer to return, to Wilkinson the 40 mineral acres he got under the deed. He did not do this, and there is no allegation in the complaint indicating that it was York's intention to rescind the contract. He could have done so but he did not. Black on Rescission, 2d ed., Vol. 3, Sec. 561; Laurel Auto Supply Co. v. Sumrall, 184 Miss. 88, 185 So. 566.

There is no better statement of the elements of actionable fraud anywhere in the authorities than that stated in 37 C. J. S., Fraud, Sec. 3, p. 215, where it is said:

"Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury."

We do not burden this opinion with a full statement or analysis of York's complaint in the federal court, but it was sufficient to the last detail to make out a classic case of fraud and deceit under the comprehensive statement of elements given in the foregoing authority. We have no difficulty in reaching the conclusion that the federal court suit was one based on fraud and deceit.

The contention that York's recovery of more than the entire purchase price had the legal or equitable effect of revesting the title to the 40 mineral acres in Wilkinson is without merit. Insofar as the briefs indicate, this Court has not decided a case involving the measure of damages in a suit based on fraudulent repre-

sentations as to title to land and we are not called upon in this case to determine what the proper measure of damages would be. It should be noted that it was not a suit on a warranty of title. It was one based on fraud and deceit and the limitations on the measure of damages in actions for breach of covenant were not present.

In the absence of knowledge of the proof made on the question of damages, we must conclusively presume that the federal court, in awarding damages to York, was justified under the law and evidence in fixing the amount of the judgment. Even if it should be conceded that York recovered excessive damages, we find no reason to hold it should change the nature of the suit or affect title to the 40 mineral acres. No applicable authority has been cited to sustain appellants' contention.

■■■ It was charged in the bill of complaint that the deed of trust given by D. A. Wilkinson and wife to R. S. Tullos, trustee, to secure a debt to the Bank of Raleigh, was a chattel deed of trust and covered only growing crops; that the attempted foreclosure of said deed of trust as to the land involved in this suit was therefore null and void. This was the sole ground of attack on the validity of the deed of trust and the subsequent foreclosure. There is no merit in the contention that the deed of trust did not embrace the land, and that contention was practically abandoned on appeal. Appellants contend now that the foreclosure was void because, they contend, the deed of trust is silent as to the place and terms of sale and mode of advertising; that, therefore, under the provisions of Section 891, Mississippi Code of 1942, the sale should have been made upon such notice, and at such time and place as is required for sheriff's sale of like property; that sheriff's sales are governed by Section 1925, Mississippi Code of 1942, which provides that sales of land may be made on the first Monday of every month, or on the first Monday or Tuesday of a term of the circuit court, etc. Appellants further say that reference to a perpetual

calendar shows that the date of foreclosure, August 31, 1946, was a Saturday, and, therefore, the sale was not held on the day authorized by law.

The deed of trust provided that in case of default, etc. ". . . the trustee shall take possession of said property, without notice of any kind, and having advertised as the law directs, sell such property or on a sufficiency thereof to make such payment for cash, at public auction in front of the East Door of the Court House of Raleigh. . ."

The deed of trust was not silent as to the place and terms of sale and mode of advertising within the meaning of Section 891, Mississippi Code of 1942. *Lynchburg Shoe Co. v. Castleman*, 116 Miss. 188, 76 So. 878. ■■■ The recitals in the foreclosure deed are sufficient to raise the presumption that the trustee fully complied with the provisions of law in reference to foreclosure sales, including the requirements of Sec. 888, Code of 1942. ■■■ The failure of the purchaser at the foreclosure to file his deed for record until January 10, 1957, did not affect the validity of the foreclosure. No rights of intervening third parties are involved.

We hold that the deed of trust embraced the land in question, the foreclosure was valid, and that the purchaser at the foreclosure sale conveyed good title to the surface rights in said lands to Charles E. Strahan, Jr.

Appellants' contention that the lower court erred in not allowing an amendment to the original bill has insufficient merit to justify discussion.

Our decision on the questions discussed disposes of the case. We see no reason to be concerned with the validity of a tax sale that would be involved if our decision on either of the other issues had been different.

Affirmed.

*Roberds, P. J.,* and *Hall, Arrington* and *Ethridge, JJ.,* concur.