274 So.2d 675 (1973)
W.M. CRAWFORD
v.
SMITH BROTHERS LUMBER COMPANY, INC.
No. 46951.
Supreme Court of Mississippi.
March 12, 1973.
Rehearing Denied April 2, 1973.
Charles A. Ray, Jr., Hazlehurst, for appellant.
Owen Roberts, Brookhaven, for appellee.
SUGG, Justice:
Appellee sued appellant for fraud and deceit seeking actual damages in the amount of $1,748.65 and punitive damages in the amount of $5,000, alleging that appellant furnished appellee a false and inaccurate timber prospectus with the fraudulent intent to deceive plaintiff and obtain a bid on timber described in the prospectus in excess of the true value thereof. Appellee was awarded a judgment against appellant for $1,748.31 in the Circuit Court of Lincoln County, Mississippi.
Appellant owned 12 acres of land in Lincoln County, Mississippi, and, with the help of an experienced timber estimator, prepared a prospectus. The prospectus showed 476 pine trees and 200 hardwood trees with a total estimated footage as follows: pine saw logs 67,058 feet, oak saw logs 29,322 feet, gum saw logs 1,162 feet. The prospectus was given by appellant to several timber purchasers with the request *676 that they bid on the tract of timber. Appellee was successful bidder with a bid of $3,785. At least two other bids were received by appellant, one from William Byrd, a witness for appellee who bid $3,780 and one from J.W. Hare, another witness for appellee, who bid $3,447.
Appellee's bid was accepted by appellant, and on February 6, 1970, appellant executed a timber deed to appellee conveying "all the timber 10 inches and up standing, lying, or being upon the lands... ." The prospectus furnished appellee and the other prospective bidders on appellant's timber showed the diameter of the trees at breast height. Appellee did not sign a timber cutting contract to purchase certain marked trees, but purchased the timber in bulk from appellant on the twelve acres of land described in the deed.
Appellee cut the timber and the tract yielded only 37,302 feet of pine and 13,794 feet of oak and gum. Appellee's proof was that it cut all the timber over 10 inches except a few unmerchantable trees. When the cutting was complete appellee suspected a shortage in trees from the number shown on the prospectus due to the shortage in board feet and counted marked stumps and standing trees over 10 inches in diameter. According to the count of appellee there were only 276 pine trees and 91 hardwood trees on the land as opposed to the 476 pine trees and 200 hardwood trees shown by the prospectus.
The prospectus was delivered by appellant to prospective purchasers approximately two weeks before bids were to be received and appellee's agent was told and admitted that there was no guaranty of the number of board feet as shown by the prospectus. The buyer for appellee testified that the usual procedure used in buying timber on an estimate or prospectus was to go to the tract of land and look at the average size of the trees and grade of the timber but no recount of the trees or estimate of the board footage was made.
His testimony on direct examination was in part as follows:
A. No, never, we don't question it, because we have come out awful good throughout the years, and we've been out there for better than 20 years, and we've bought timber the whole period of time from prospectus like this furnished by them, and I could name lots of companies, the National Forest furnishes them, and the Federal Government furnishes them.
Q. And is it your practice in your business to rely on prospectus that is given to you by timber sellers?
A. That's just about all you can rely on. Now you can look at the grade of the timber and the size of the timber, but that's about it.
Q. And I'll ask you whether or not you relied on the prospectus that was furnished you by Bill Crawford in this case?
A. We did, all the way, but Bill told me he would not guarantee the footage, but I wasn't worried about the footage.
Q. He said he would not guarantee the footage?
A. That's right.
Q. All right, but that's, you said you weren't worried about the footage?
Appellee's timber buyer was asked on cross-examination if he went on the land and cruised the timber and responded:
No sir, because it had been a standing practice with International Paper, Johns-Mansville, National Forest areas, all your bigger companies, Forestry Consultants out of Jackson, when they deliver you a prospectus, you will get your tree count; they will not guarantee you your footage, but you will get your tree count. That is the idea of any prospectus, *677 so a man will know how many trees is there, and he can get his size. We do look at the grade and the average size.
Before appellee submitted a bid, its timber purchaser went to the tract of land at least two times but did not make an estimate of the timber as to quantity and quality. He explained that he was not concerned about the footage of timber on the estimate, because when the number of trees was given, the number of board feet sawed out of a given tract of timber will vary because of the different lengths of logs that may be cut by the purchaser.
Appellee's purchaser admitted that he had over 20 years experience of buying timber, that he was an experienced timber estimator, and could look at a tract of timber and estimate its value.
Appellee relied on the proposition that the prospectus furnished it was erroneous; that it was entitled to rely on the prospectus without the necessity of checking the accuracy of the figures although appellant specifically stated that he would not guarantee the board footage.
It is a well recognized rule that fraud is never presumed, but must be proven as to all elements by clear and convincing evidence. Brewster v. Bubba Oustalet, Inc., 231 So.2d 189 (Miss. 1970); McGehee v. McGehee, 227 Miss. 170, 85 So.2d 799 (1956); Hunt v. Sherrill, 195 Miss. 688, 15 So.2d 426 (1943).
Appellee relies on Reed v. Charping, 207 Miss. 1, 41 So.2d 11 (1949) as controlling. This case is distinguishable because in Reed, supra, the seller was a member of the Board of Supervisors of his county who was charged with the duty of rendering his own acreage for assessment and also with the duty of equalizing and approving land assessment rolls in his county and that he made a warranty that there were 5,000 acres of cultivatable land within the protection of the Mississippi River levee. It was shown that the seller represented he had between 5,500 and 6,000 cultivated acres within the protection of the levee and a price was discussed and tentatively agreed upon based upon a guarantee of 5,500 cultivatable protected acres with a provision for reduction in the price at the rate of $50 per acre for any shortage in amount, but appellee did not agree to such a guaranty with provisions for reduction. The final contract was that appellee represented that he had as much as 5,000 cultivatable acres protected by the levee and reduced his price $25,000, being a 500 acre reduction at the value of $50 per acre. The proof was that only slightly in excess of 3,500 cultivatable acres were protected by the levee instead of the 5,000 acres represented by the seller being protected by the levee.
This Court remanded the case for the purpose of determining the amount of cultivatable land within the protection of the levee and for a determination of the amount of damages which appellant sustained as a consequence of the misrepresentation by the seller. In the instant case there was no guarantee of board footage which distinguishes it from Reed, supra, where there was a material and specific representation that at least 5,000 acres were protected by the levee.
Appellee also relies on Brown v. Ohman, 42 So.2d 209 (Miss. 1949) where the seller grossly misrepresented the fact that there was in excess of one million board feet of merchantable timber on the land he was proposing to sell when in fact there were only approximately 150,000 feet of merchantable timber of low grade. The Court took note of the fact that the purchaser had no knowledge of the kinds and grade of timber, and that when he went to look at the timber, water from the bayous had flooded the timberland so that it was impossible to inspect the timber without wading. On the day the sale was closed the seller again represented that there were more than one million feet of timber on the land.
Brown, supra, is distinguishable because the seller made a representation of guaranty *678 of the number of board feet of timber, but no guaranty of board footage was made by appellant to appellee in the instant case.
The elements of actionable fraud are set forth in Gardner v. State, 235 Miss. 119, 108 So.2d 592 (1959), where this Court stated:
There is no better statement of the elements of actionable fraud anywhere in the authorities than that stated in 37 C.J.S. Fraud § 3, p. 215, where it is said:
"Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury." (235 Miss. at 130, 108 So.2d at 594.)
We hold that the purchaser had no right to rely on the prospectus in this case because it was specifically informed that appellant did not guarantee the quantity of timber and the timber covered by the prospectus was shown to appellee's agent who made no effort to ascertain the quantity. Since all the elements of actionable fraud are not present, the directed verdict should have been granted as requested by appellant.
Appellant also assigns as error the action of the trial court directing the jury to find for the appellee on his counterclaim. Appellant claimed appellee was liable for damages to the timber remaining on the land after appellee had completed cutting the timber because of negligence in cutting and logging such timber. We have carefully examined all the testimony with respect to this assignment of error and hold that the appellant did not present enough proof on the issue to warrant submission of the claimed negligence of appellee to the jury; therefore, the court properly directed the jury to find for appellee on this issue.
Appellant also assigns as error certain instructions that were granted by the court, but in view of our holding that appellant was entitled to a directed verdict, it is not necessary to consider the instructions complained of.
For the reasons stated, this case is reversed in part, affirmed in part and rendered.
Reversed in part, affirmed in part and rendered.
RODGERS, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.