Mrs. Lucille Jurisich BREELAND et al., Plaintiffs-Appellants, Cross Appellees,

v.

HIDE–A–WAY LAKE, INC. et al., Defendants-Appellees, Cross Appellants,

Hide-A-Way Lake Club, Inc., and Hide-A-Way Lake Property Owner's Association, Inc., Intervenors.

Mrs. Lucille Jurisich BREELAND et al., Plaintiffs-Appellants,

v.

HIDE–A–WAY LAKE, INC., Defendants-Appellees.

Nos. 76–1647, 77–1244.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1978.

Ronald G. Peresich, Biloxi, Miss., Thomas L. Giraud, New Orleans, La., Samuel W. Ethridge, Kenner, La., for plaintiffs-appellants in both cases.

Claiborne McDonald, IV, Lonnie Smith, Picayune, Miss., for Donald Ginn in both cases.

Blake Tartt, Houston Tex., Thomas W. Hathaway, Tyler, Tex., J. Edmand Pace, Picayune, Miss., for Hide-A-Way Lake Inc., et al. in both cases.

Ray M. Stewart, for Intern'l Land, Inc., et al.

Thomas W. Tyner, Hattiesburg, Miss., for other interested parties in both cases.

Dan Hedges, Houston, Tex., Ray M. Stewart, Picayune, Miss., for Hide-A-Way Lake Inc., et al. in 77–1244.

Before COLEMAN, SIMPSON and TJO-FLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

This diversity action[1] was brought by purchasers of residential sites in the Hide-A-Way Lake development located near Picayune, Mississippi. Joined as defendants were the developer and others purportedly involved in the enterprise. Plaintiffs alleged that they were induced to purchase their sites through various fraudulent misrepresentations made by the defendants, and they sought damages and other relief. Following the first stage of the trial on the merits, the district court, on February 10, 1976, entered a partial final judgment dismissing the case as to some of the defendants for want of in personam jurisdiction. Subsequently, when the trial on the merits was concluded, the court found that the plaintiffs had failed to make out a case as to any of the defendants and on January 6, 1977 entered a final judgment dismissing all claims. We consolidated the plaintiffs' separate appeals from these judgments.[2]

I

Hide-A-Way Lake is a weekend resort community located approximately fifty miles from New Orleans, the appellants' place of residence. Appellants were made aware of the community's existence through various newspaper advertisements and other promotional activities conducted in New Orleans. These advertisements and promotional activities, appellants contend, contained fraudulent misrepresentations as to the nature and quality of facilities to be provided and induced them to make their purchases.[3]

Named as parties defendant were Hide-A-Way Lake, Inc. (Hide-A-Way), a Mississippi corporation, the developer; International Land, Inc. (International), a Texas corporation and sole stockholder of Hide-A-Way; James W. Fair and Thomas Gordon, Jr., officers and directors of Hide-A-Way; Michael Gulla, formerly a vice-president and director of Hide-A-Way and a director of International; Antoinette M. Gulla, an International stockholder; Crystal Systems, Inc. (Crystal), a Texas corporation licensed in Mississippi, the owner and operator of the development's water system; and Donald Ginn, a real estate salesman. Two parties subsequently intervened as defendants: Hide-A-Way Lake Club, Inc., a Mississippi corporation and owner of the community's common facilities, which had an option to purchase the water system, and Hide-A-Way Lake Property Owners' Association, Inc., a Mississippi nonprofit corporation made up of the residential owners in the subdivision, to which the stock of Hide-A-Way Club, Inc., had been assigned.

1. 28 U.S.C. § 1332 (1976).

2. No. 76–1647 is an interlocutory appeal under 28 U.S.C. § 1292 (1976) from the judgment of February 10, 1976; No. 77–1244 is an appeal under 28 U.S.C. § 1291 (1976) from the judgment of January 6, 1977.

3. The amended complaint alleges, in substance, that the defendants represented that the development would have: (1) a 200 acre lake fit for boating, fishing, water skiing, and swimming; (2) a marina; (3) a dam and spillway; (4) an olympic size swimming pool; (5) a nine-hole golf course, with nine additional holes proposed; (6) a softball field; (7) an airstrip; (8) all-weather roads; (9) utilities; and none of the problems of cities. It is alleged that, in fact, the development was deficient in these respects: (1) the lake was incomplete, less than 200 acres in size, and presented hazards to recreational activities because of the presence of numerous tree stumps and small islands; (2) there was no marina; (3) the dam was constructed improperly, and the spillway was inadequate; (4) the septic tank sewage system was unsatisfactory and presented a pollution problem to the lake and the water supply; (5) the water system was inadequate; (6) the swimming pool was less than olympic size; (7) there was no softball field; (8) the surface of the airstrip was temporary and in need of immediate resurfacing; and (9) the roads were not all-weather and were washing out because of improper foundations and surfaces. Record, vol. 1, at 1–6, 221–24.

■ The suit was filed in the District Court for the Southern District of Mississippi. The plaintiffs invoked the Mississippi long-arm statute [4] for the purpose of obtaining in personam jurisdiction over the nonresident defendants: International, Fair, Gordon, and the Gullas. Each nonresident interposed a timely Fed.R.Civ.P. 12(b)(2) objection to the court's jurisdiction, claiming that the Mississippi long-arm statute was not available to nonresident plaintiffs such as the appellants in this case. Their objections were overruled. Record, vol. 1, at 96. These jurisdictional attacks were reconsidered at the trial and upheld; the partial final judgment was entered dismissing the nonresident defendants.[5]

On the evidence before it, the court found that Hide-A-Way had made one of the fraudulent misrepresentations charged in the plaintiffs' complaint, the one concerning the availability of a golf course at the development site. In the partial final judgment the court retained jurisdiction for the purpose of receiving further evidence to determine the appropriate measure of damages. Supplemental testimony of witnesses, in the form of depositions, was subsequently filed by the parties. This testimony, together with all the other evidence previously presented in the case, was considered by the court as to all the parties, and a final judgment was entered exonerating the defendants.[6] Partial Record at 56—

4. The Mississippi long-arm statute, Miss.Code Ann. § 13–3–57 (Supp.1978), provides in pertinent part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall be such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee.
>
> . . . .
>
> The doing of such business, or the engaging in any such work or service in this state, or the making of such contract, or the committing of such tort in this state, shall be deemed to be a signification of such nonresident's agreement that any process against it or its representative which is so served upon the secretary of state shall be of the same legal force and effect as if served on the nonresident at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.

5. Also dismissed for want of jurisdiction over the person was Crystal, which, though a Texas corporation, had been licensed to do business in Mississippi. The dismissal of Crystal on jurisdictional grounds was therefore erroneous. It is not necessary for us to remand the case for further proceedings as to Crystal, however, because it is clear from the evidence in the record, and the district court in effect found in its order of December 23, 1976, that the plaintiffs' claims against Crystal, which pertained to the subdivision's water system, were meritless. See note 6 *infra*.

Three other parties defendant were dismissed by the entry of the partial final judgment. Hide-A-Way Lake Club, Inc., and Hide-A-Way Property Owner's Association, Inc., were dismissed without prejudice as to any party, and no contention is made here that their dismissal was erroneous. Donald Ginn, a Mississippi real estate salesman, was dismissed, apparently on the merits, but the reasons for the disposition were not stated. We have carefully examined the record in the light of appellants' contentions as to Ginn and conclude, as we think the trial court did, that appellants failed to establish a claim against him. See note 6 *infra*. In reaching this conclusion, we note that appellant Carroll J. Breeland, who dealt directly with Ginn, testified that any representations Ginn made were made *after* Breeland executed the contract for sale, Record, vol. 5, at 638, and consequently could not have formed the basis of a claim that the representations induced the signing of the agreement.

6. In entering the partial final judgment on February 10, 1976, the court, though finding that Hide-A-Way had falsely misrepresented that an eighteen-hole golf course was available at the development site, made it clear that the judgment was only an interim order. The court provided that after receiving evidence on damages, it would "enter an order finally adjudicating all of the rights of each party against the

57. Although the court found that the plaintiffs had not been defrauded or misled, or even subjected to a material misrepresentation, and that they were entitled to no relief, the court taxed the costs of the litigation against one of the prevailing defendants, Hide-A-Way.

In these appeals, appellants contend (1) that the district court erred in holding that the Mississippi long-arm statute is not available to nonresident plaintiffs for the purpose of obtaining in personam jurisdiction over nonresident defendants and (2) that the court's finding that actionable fraudulent misrepresentations were not made is clearly erroneous. Hide-A-Way cross-appeals, asking us to reverse the district court's taxation of costs against it.

## II

The amenability of a nonresident defendant to a diversity action in a federal district court is governed by the law of the forum state. Accordingly, a district court may exercise in personam jurisdiction over a foreign defendant only if a state court could do so in the proper exercise of state law, including the state's long-arm statute. *Mack Trucks, Inc. v. Arrow Aluminum Castings Co.*, 510 F.2d 1029, 1031 (5th Cir. 1975); *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc); Fed.R.Civ.P. 4(d)(7); *see Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under the Mississippi long-arm statute [7] there are three categories of nonresident defendants who are subject to personal jurisdiction: (1) any nonresident who makes a contract with a resident of Mississippi to be performed in whole or in part by any party in that state, (2) any nonresident who commits a tort in whole or in part in the State of Mississippi against a Mississippi resident, and (3) any nonresident who does any business or performs any work or service in the state. *C. H. Leavell & Co. v. Doster*, 211 So.2d 813, 814 (Miss.1968).

Appellants maintain that the third category of defendants may be called to answer when sued by persons not residents of Mississippi. In dismissing this action against the nonresident defendants for lack of in personam jurisdiction, the district court stated as follows:

> The plaintiffs in this case are residents and citizens of the state of Louisiana. The contract of sale as to each of the plaintiffs expressly provides that: "Buyer acknowledges that buyer does not expect to use the property as buyer's principal residence." It is not the policy of the courts of Mississippi to extend its jurisdiction under that statute in any controversy wherein a non-resident plaintiff asserts a claim and seeks to procure jurisdiction under this wholesome statute designed and intended for the sole use and protection of residents and citizens of the state of Mississippi who wish to assert some extended jurisdiction of non-residents who are not available for personal service of process and are involved in a controversy with the resident of the state of Mississippi. The motions of the non-

---

other." Record, vol. 2, at 518. We see nothing inconsistent in the court's finding of false misrepresentation on the one hand and its retention of jurisdiction to determine the rights of the parties (including liability) on the other. Under Mississippi law, a false misrepresentation, standing alone, is not actionable. Proof of other elements, including damage, is necessary. See Part III *infra*.

In arriving at the final judgment of January 6, 1977, the court obviously reconsidered all of the evidence in the case, as to liability as well as damages, as it related to the plaintiffs' claims against each defendant. This is apparent in reading the court's order of December 23, 1976, Partial Record at 52–55, wherein the court stated that it had reviewed the entire record in the case, following the receipt of the supplemental evidence on damages. In that order, the court made extensive findings as to liability, including the finding that the golf-course misrepresentation claim was meritless. Though the texts of the December 23, 1976 order and the January 6, 1977 final judgment entered pursuant thereto do not name all of the defendants in the case, we think that a fair reading of those texts leads to the conclusion that the court was disposing of the merits of the plaintiffs' claims against each of the defendants named in the complaint as amended.

7. Quoted in note 4 *supra*.

resident defendants for dismissal of this claim will be sustained without prejudice or advantage to anyone.

Record, vol. 2, at 509–10. The appellants assert that it is apparent from this language that the trial court misconstrued the statute. They also claim that the court's construction is violative of the privileges and immunities clause of the United States Constitution.[8]

Neither the briefs of the parties nor our own research indicate that these precise questions have been resolved by the Supreme Court of Mississippi. But existing Mississippi case law, as well as the decisions of the federal district courts in Mississippi, strongly suggest that the appellants' positions are without merit.

The predecessor to the present Mississippi long-arm statute reached nonresident defendants only when it was demonstrated that they had "do[ne] any business or perform[ed] any character of work or service in this state . . . ." 1940 Miss. Laws ch. 246 (formerly codified at Miss.Code Ann. § 1437 (1942)). Mississippi courts construing this "doing business" provisions have consistently found that it was designed for the purpose of providing *Mississippi residents* with a means of acquiring personal jurisdiction over nonresidents. *See Davis-Wood Lumber Co. v. Ladner*, 210 Miss. 863, 50 So.2d 615, 621 (1951); *Lee v. Memphis Publishing Co.*, 195 Miss. 264, 14 So.2d 351, 357 (1943) (Roberds, J., dissenting); Brown & Scott, *In Personam Jurisdiction Under Mississippi's Long Arm Statute*, 43 Miss. L.J. 1, 12 (1972) (only residents of Mississippi may utilize the statute to secure jurisdiction over a nonresident). More recently,

the Supreme Court of Mississippi has held that a foreign corporation qualified to do business in the State of Mississippi is a resident within the meaning of the statute and is entitled to utilize its provisions. *C. H. Leavell & Co. v. Doster*, 211 So.2d 813 (Miss.1968). We read this holding to mean that a foreign corporation not so qualified cannot invoke the terms of the long-arm statute.[9]

The federal district courts confronted with this question have almost uniformly held that the Mississippi long-arm statute is not available to a nonresident plaintiff in a diversity action against a nonresident defendant. *See F. L. Crane Co. v. Cessna Aircraft Co.*, 73 F.R.D. 384 (N.D.Miss.1976); *McAlpin v. James McKoane Enterprises, Inc.*, 395 F.Supp. 937, 941 (N.D.Miss.1975); *American International Pictures, Inc. v. Morgan*, 371 F.Supp. 528 (N.D.Miss.1974). *But see Daniels v. McDonough Power Equipment, Inc.*, 430 F.Supp. 1203, 1209 (S.D.Miss.1977). *Morgan* was a diversity suit by nine foreign corporations against a Florida resident. The defendant, conceding that he was doing business in Mississippi, contended that he was beyond the reach of the Mississippi long-arm statute because the plaintiff nonresident corporations were not qualified to do business in the state. In response, the plaintiffs asserted that the defendant's doing business in the state was dispositive of the jurisdictional question. The district court sustained the motion to dismiss. In holding that the "doing business" provision of the long-arm statute was available to resident plaintiffs only, the court said:

**8.** The privileges and immunities clause provides as follows:
"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S.Const. art. IV, § 2, cl. 1.

**9.** *C. H. Leavell & Co.* was a breach of contract action initiated by two nonresident corporations against a nonresident defendant. The plaintiffs sought personal jurisdiction over the defendant under the statute's provision for service on a nonresident who makes a contract with a resident that is to be performed in whole or in part in the State of Mississippi. The court

held that a foreign corporation qualified to do business in the state is a resident within the meaning of the statute. Alternatively, the court indicated that the nonresident defendant was also subject to suit under the "doing business" provision of the statute. The appellants contend that this alternative holding supports their theory that a nonresident plaintiff may invoke the "doing business" provision against a nonresident defendant. Their theory goes counter to the overwhelming weight of Mississippi jurisprudence.

We are thus of the view that by the enactment of the state's long-arm statute, as consistently construed by prior cases, the state legislature intended to afford a remedy only to residents who might have claims or grounds of action against nonresidents from activity done within the state, thus obviating the necessity for its citizens to resort to a foreign jurisdiction for enforcement of their rights. When taken in its entirety, the long-arm statute was clearly enacted for the benefit of residents only, and the legislation has not been expanded through the process of judicial interpretation to include nonresident plaintiffs not qualified to do business within the state. Contrary to plaintiffs' assertions, we perceive no defect under federal constitutional standards for limiting a long-arm statute to resident plaintiffs since a state is not obliged to make its courts available to nonresidents, who themselves are not doing business in the state, to sue other nonresidents. We readily acknowledge that the classification of persons or corporations for legislative purposes must be based on some reasonable ground or difference bearing a proper and just relation to the object sought to be accomplished. Here, the object sought to be accomplished is the protection of the rights of Mississippi residents, as first proclaimed in *Lee v. Memphis Publishing Company,* [195 Miss. 264, 14 So.2d 351 (1943)]; and this classification is in no way discriminatory. *Sugg v. Hendrix,* [142 F.2d 740 (5th Cir. 1944)].

371 F.Supp. at 532.

As for the appellant's claim that the district court gave the statute an unconstitutional construction, we think our opinion in *Sugg v. Hendrix,* 142 F.2d 740 (5th Cir. 1944), puts the issue to rest. In disposing of a contention that the Mississippi long-arm statute denied nonresidents due process and equal protection of the law and infringed their privileges and immunities, we said:

[I]t seems that the power of the state to confer jurisdiction in the courts over the persons of individual non-residents by such substituted service depends entirely upon whether or not such enabling statute is a reasonable exercise of the police power of the state in the regulation of the business that is being conducted in the state by such non-resident individual defendants. If the regulation be one for the protection of the health, safety, and welfare of those within its borders, rather than a mere attempt to extend the jurisdiction of its courts over citizens beyond its borders, the state is not without power to legislate to that end. The statute must, if fairly possible, be so construed as to be constitutional.

142 F.2d at 743. We are convinced that this language and the holding of the case require us to reject the constitutional claim the appellants urge here. We hold, therefore, that the "doing business" provision of the Mississippi long-arm statute may not be invoked by a nonresident plaintiff and that the statute, so construed, does not deny a nonresident plaintiff privileges and immunities secured under the Constitution.

### III

■ With respect to the appellants' claims of fraudulent misrepresentation, it is clear that, under Mississippi law, which the *Erie* doctrine requires us to apply, *all* elements of fraud must be established by clear and convincing evidence before the complaining party can recover. *Hamilton v. McGill,* 352 So.2d 825, 831 (Miss.1977); *Crawford v. Smith Brothers Lumber Co.,* 274 So.2d 675, 677 (Miss.1973); *Rhyne v. Gammil,* 215 Miss. 68, 60 So.2d 500, 502 (1952). The elements of the cause of action are (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it should be acted upon by another in a manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) consequent and proximate injury. *Hamilton v. McGill,* 352 So.2d at 831; *Crawford v. Smith Brothers Lumber Co.,* 274 So.2d at 678; *McMahon v. McMahon,* 247 Miss. 822, 157 So.2d 494, 501 (1963); *Gardner v. State,* 235 Miss. 119, 108 So.2d 592, 594 (1959).

The district court applied the proper "clear and convincing" test in assessing the appellants' claims. Record, vol. 2, at 513. As to their allegations regarding the lake, sewage, swimming pool, and paved roads, the court, in its partial final judgment, found "these complaints . . . captious in the extreme and certainly . . . not add[ing] anything to the heavy burden which these plaintiffs have to show that they have been defrauded by this defendant, and to show such fact by clear and convincing evidence as they must." *Id.* at 515. Only the representation about the availability of a golf course was characterized by the district court as fraudulent. *Id.* at 515–16, 518. And after receiving additional evidence and reexamining the entire record, the district court concluded that even this claim was meritless because none of the appellants had been misled or had purchased lots because of their proximity to a golf club.[10] Partial Record at 53.

Under Fed.R.Civ.P. 52(a), our scope of review is limited to determining whether the district court's findings are clearly erroneous, giving due regard for the opportunity of the trial judge to assess the credibility of witnesses. When, as here, we are reviewing findings made pursuant to the clear and convincing evidence test, it seems to us that the trial judge's credibility choices must be given considerable weight. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Mercer v. C. A. Roberts Co.*, 570 F.2d 1232, 1236 n. 5 (5th Cir. 1978).

## IV

The remaining question is whether the district court erred in taxing all costs against Hide-A-Way, a prevailing party in this litigation. Fed.R.Civ.P. 54(d) provides for the allowance of costs in civil litigation. It states, in pertinent part, as follows: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . ." There is no applicable statute or rule providing for the allowance of costs in this case;[11] therefore, rule 54(d) itself provides the operative standard.

It is well established that the district court enjoys discretion in determining who shall bear the costs of litigation and how much of the costs shall be apportioned to a taxed party. *United States v. Mitchell*, 580 F.2d 789, 793–94 (5th Cir. 1978); *In re Nissan Antitrust Litigation*, 577 F.2d 910, 918 (5th Cir. 1978); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2668 (1973). The rule does, however, embody the policy that a prevailing party will ordinarily be awarded costs, or will at most be denied

---

10. There was considerable evidence in the record as to the representations made with respect to golfing facilities. The Property Report signed by appellant Carroll J. Breeland explicitly provided that golf facilities were available "at adjoining Millbrook Golf and Country Club for an initiation fee of $225.00 plus monthly dues of $12.50." Plaintiff's Exhibit 19, ' 9(a). Appellant Jack R. Schega, Jr.'s testimony that Jordan, a Hide-A-Way salesman, represented that a golf course would be built in the development was controverted by Jordan's testimony. *Compare* Record, vol. 5, at 656, 736–42 *with id.*, vol. 8, at 1303. Schega testified that he attended a promotional dinner given by the developer in New Orleans. *Id.*, vol. 5, at 652. The prepared script used at the presentation there clearly indicated that memberships were available to Hide-A-Way property owners, not that a separate golf course would be constructed. Plaintiff's Exhibit 33, at 11.

11. The statute executing federal diversity jurisdiction, 28 U.S.C. § 1332 (1976), does provide that a plaintiff who prevails may be denied an award of costs or even taxed costs if he recovers less than the $10,000 jurisdictional amount. 28 U.S.C. § 1332(b) (1976). Section 1332(b) is clearly inapposite here because it was designed to deter the invocation of diversity jurisdiction through the assertion of an inflated claim. S.Rep.No.1830, 85th Cong., 2d Sess. 1, *reprinted in* [1958] U.S.Code Cong. & Admin.News p. 3099. This policy could not possibly be furthered by imposing the sanctions of § 1332(b) upon a prevailing defendant such as Hide-A-Way.

an award of costs if the circumstances so warrant. *See id.* at 142–43. Here, the district court took the unwonted course of *taxing* a prevailing party. The court provided no justification for its decision, and on this record we can imagine none. Hence, we find that the court abused its discretion in taxing the costs to Hide-A-Way. Therefore, we remand to the district court for a reallocation of costs.

## V

The judgment of the district court is affirmed in all respects except the taxation of costs. As to the taxation of costs, the judgment is reversed, and the cause is remanded for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.