Wilbert J. SHEETS, Plaintiff–Appellee Cross–Appellant,

v.

YAMAHA MOTORS CORPORATION, U.S.A. and Yamaha Motor Co. Ltd. of Iwata, Japan, Defendants–Appellants Cross–Appellees.

No. 89–3045.

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1990.
Rehearing and Rehearing En Banc Denied Feb. 20, 1990.

**534**

David F. Bienvenu, Donald Ensenat, Hoffman, Sutterfield, Ensenat & Bankston, Maureen B. Jennings, New Orleans, La., for defendants-appellants cross-appellees.

Thomas Earl Patton, Lisa N. Speers, Washington, D.C., Charles H. Lockwood, II, Auto. Importers of Am., Inc., John T. Whatley, Arlington, Va., for amicus–Auto. Importers of Am.

Steven J. Lane, Russ M. Herman, Herman, Herman & Katz, New Orleans, La., for plaintiff-appellee cross-appellant.

Before THORNBERRY, GARWOOD, and DUHÉ, Circuit Judges.

THORNBERRY, Circuit Judge:

Yamaha Motor Corporation, U.S.A. and Yamaha Motor Company, Ltd. of Japan appeal the district court's award of rule 11 sanctions against them for failing to waive service of process under the Hague Service Convention. They also appeal the taxation of costs against them. Plaintiff-appellee Wilbert J. Sheets brings a cross-appeal alleging that the district court erred in refusing to impose discovery sanctions. We reverse the district court's award of rule 11 sanctions, and affirm the refusal to award discovery sanctions and the taxing of costs against defendants.

### Facts and Procedural History

Plaintiff-appellee Wilbert J. Sheets, the purported inventor of an air snorkel device for a Yamaha tri-motorcycle, brought suit against Yamaha Motor Corporation, U.S.A. (Yamaha U.S.A.) and Yamaha Motor Company, Ltd. (Yamaha Japan) alleging misappropriation of a trade secret and unjust enrichment. Plaintiff attempted to serve process on Yamaha Japan pursuant to the Louisiana long-arm statute. LSA–R.S. 13:3201 *et seq.* Yamaha Japan filed a motion to quash service of process based on plaintiff's failure to procure proper service pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965 (Hague Convention), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638. The district court granted this motion, and plain-

tiff served Yamaha Japan in accordance with the Hague Convention. Following the presentation of plaintiff's case, the district court dismissed the entire claim pursuant to Fed.R.Civ.P. 41(b), but awarded sanctions of $25,000 and costs against Yamaha U.S.A. and Yamaha Japan for "forc[ing] plaintiff to go through the charade of serving it under the Hague Convention," failing to conduct pretrial discovery in good faith, and for otherwise needlessly increasing the costs of the litigation. *Sheets v. Yamaha Motors Corp., U.S.A.*, 657 F.Supp. 319, 323–24, 328 (E.D.La.1987).

On appeal, this court affirmed the dismissal of plaintiff's case and remanded the issue of sanctions back to the district court for further elaboration of the "specific behavior the court was sanctioning and what rules, or provisions within these rules, the court relied upon to award sanctions." *Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 186 (5th Cir.1988) [hereinafter *Sheets I* ]. This court also indicated that there appeared to be no basis for sanctioning defendants for insisting that service of process on Yamaha Japan conform with the Hague Convention. *Id.* at 185 n. 5.

On remand, the district court requested that plaintiff submit a statement of the defendants' wrongful conduct and the particular expenses that were needlessly incurred as a result. After receiving the plaintiff's submissions, the district court denied sanctions for discovery abuses on the grounds that the plaintiff's submissions fell "woefully short" of indicating the amount of attorney's fees and expenses that were incurred as a result of discovery abuses. As for the insistence on service pursuant to the Hague Convention, the district court relied on the recent Supreme Court case of *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) to find that service may be effected on a wholly owned subsidiary, such as Yamaha U.S.A., as agent for its foreign parent company. Thus, the district court awarded $1200 in sanctions under rule 11 against defendants on the grounds that insistence on Hague Convention service of process was needlessly interposed and made solely for the purpose of delay. The district court also ordered the defendants to bear all costs. All parties have appealed.

## Discussion

### I. Rule 11 Sanctions

We turn first to the award of rule 11 sanctions against defendants for filing the motion to quash service, which forced plaintiff to serve process on Yamaha Japan pursuant to the procedures under the Hague Convention. In reviewing the district court's grant of sanctions under rule 11, this court is limited to determining whether the district court abused its discretion. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 871–72 (5th Cir.1988) (en banc). Defendants argue that granting rule 11 sanctions was an abuse of discretion because insisting on Hague Convention service was entirely proper not only at the time it was filed, but also after the intervening Supreme Court decision in *Schlunk*. We agree.

Rule 11 provides in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. Under this rule, there are three grounds for imposing rule 11 sanctions: the motion was (1) not well grounded in fact; (2) not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and (3) interposed needlessly and solely for

purposes of delay.[1] The district court suggested that the latter two grounds were met.

A. *Warranted by Existing Law or a Good Faith Argument for Extension, Modification, or Reversal Thereof*

The defendants' motion to quash service was submitted to the district court on December 18, 1984. Although the district court did not indicate its reasons, it apparently felt that Yamaha Japan's motion was meritorious at the time because it *granted* the motion on January 2, 1985. Nevertheless, three years later, following remand from this court, the district court found that *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) reinforced its legal conclusion that Yamaha Japan's insistence on Hague Service was not well grounded in law.

First, justifying sanctions based on a case decided four years after a motion was filed violates the *Thomas* "snapshot" rule, which provides that rule 11 "review focuses upon the instant when the picture is taken—when the signature is placed on the document." *Thomas*, 836 F.2d at 874. Under this rule, a district court should avoid taking the benefit of hindsight and instead focus on whether, *at the time it was signed*, the paper was well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. *Jennings v. Joshua Indep. School Dist.*, 877 F.2d 313, 320 (5th Cir.1989), *petition for cert. filed*, 1989 WL 114908 (U.S. Sept. 15, 1989) (No. 89–469).

Second, even considering the intervening decision of *Schlunk*, Yamaha Japan was well within its right to insist on service pursuant to the Hague Convention. The district court found that because the Illinois statute in *Schlunk* and the Louisiana long-arm statute were similarly worded, the holding in *Schlunk* applied and therefore insisting on service pursuant to the Hague Convention was improper. We believe that a more thorough analysis is required.

In *Schlunk*, the plaintiff filed a wrongful death action against Volkswagen of America, Inc. (VWoA) and Volkswagenwerk Aktiengesellschaft (VWAG), the German corporation that wholly owns and controls VWoA. Plaintiff served process on VWAG by serving VWoA as VWAG's agent for service of process pursuant to the Illinois long-arm statute. *See* Ill.Rev.Stat., ch. 110, ¶ 2–209(a)(1) (1985). VWAG attempted to quash service on the grounds that plaintiff failed to comply with procedures set forth in the Hague Convention. After the Illinois state courts rejected this argument, the Supreme Court granted VWAG's writ of certiorari.

The Court began its analysis by explaining that the Hague Convention

> was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. . . .
>
> The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. 20 U.S.T. 362, T.I.A.S. 6638, Art. 2. Once a central authority receives a request in the proper form, it must serve the document by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. Art. 5. The central authority must then provide a certificate of service that conforms to a specified model. Art. 6.

*Id.* at 698, 108 S.Ct. at 2107, 100 L.Ed.2d 722. Article 1 provides that the Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. at

---

**1.** *See generally* W. Schwarzer, Sanctions under the New Federal Rule 11—A Closer Look, 104 F.R.D. 181, 186–97 (1985).

362. After examining the text and negotiating history of article 1, the Court concluded that service pursuant to Hague Convention procedures is required only if the method of serving process involves the transmittal of documents abroad. In determining whether service involves the transmittal of documents abroad, courts are to look to the method of service prescribed by the internal law of the forum state. *Id.* at 699–706, 108 S.Ct. at 2108–11, 100 L.Ed.2d 722.

Under the Illinois long-arm statute, as long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary— without sending documents abroad.[2] *Id.* at 706, 108 S.Ct. at 2111, 100 L.Ed.2d 722. Therefore, because the plaintiff in *Schlunk* served VWAG pursuant to Illinois law without involving transmittal of documents abroad, the Hague Convention did not apply, and service was proper. *Id.* at 707, 108 S.Ct. at 2112, 100 L.Ed.2d 722.

Without delving into whether Louisiana law permits service of a foreign corporation by serving its domestic subsidiary, we simply point out that plaintiff never served the domestic subsidiary Yamaha U.S.A. as an agent for its parent, Yamaha Japan. Instead, plaintiff attempted service pursuant to the Louisiana long-arm statute by mailing a copy of the pleadings directly to Yamaha Japan. This transmittal of documents abroad is precisely the type of service that triggers the application of Hague Convention procedures. Thus, because the service that plaintiff attempted fell squarely within the scope of Hague Convention, insisting on service pursuant to its provisions was warranted by existing law.

### B. *Not Interposed for Any Improper Purpose*

 Even if a party's motion is well grounded in fact and warranted by existing law, the second prong of rule 11 provides that it may be sanctionable if it is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." In imposing sanctions on these grounds, the district court found that

> defendant Yamaha Japan's failure to waive service under the Hague [C]onvention needlessly increased the cost of litigation under the circumstances of this case: This is not a case where the separate identity of the parent and subsidiary was carefully observed, as would be evidenced by the retention of separate counsel for each entity. Rather, the same attorney represented each allegedly disparate party throughout this case once the Hague service formalities were observed, notwithstanding intense haggling early in the case over which Yamaha entity did what when.

Once again, we point out that the district court *granted* the motion to quash service, presumably recognizing that service in conformity with the Hague Convention was required. Under such circumstances, it is difficult to comprehend how the motion

---

**2.** The jurisdictional power of the Illinois courts is governed by Ill.Rev.Stat., ch. 110, ¶ 2–209(a)(1), and was not disputed by VWAG. But VWAG did object to jurisdiction on the grounds that service was improper. Paragraph 2–204 governs service of process and provides that a private corporation may be served by "leaving a copy of process with its registered agent or any officer or agent of the corporation found anywhere in the State." Ill.Rev.Stat. ch. 110, ¶ 2–204. In determining whether VWoA could be considered an agent for service of process on VWAG, the Illinois court explained:

> It is clear under Illinois law that "[w]here the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service

of process on one corporation effective as to the others." (*Rymal v. Ulbeco, Inc.* (1975), 33 Ill.App.3d 799, 803, 338 N.E.2d 209, 213.). *Schlunk v. Volkswagenwerk Aktiengesellschaft,* 145 Ill.App.3d 594, 105 Ill.Dec. 39, 503 N.E.2d 1045, 1054 (1986), *appeal denied,* 112 Ill.2d 595, *aff'd,* 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Because the court found that VWGA's control over VWoA was pervasive, service on VWoA as agent for VWAG was proper. *Id.,* 503 N.E.2d at 1049–54.

Here, the district court failed to undertake a similar analysis of Louisiana law. Nevertheless, because the plaintiff never served process on Yamaha Japan by serving its domestic subsidiary Yamaha U.S.A., we express no opinion as to whether the type of service effected in *Schlunk* is permitted under Louisiana law.

could have been so harassing and frivolous as to warrant sanctions if it had sufficient merit to be granted in the first place. In a similar context, courts have held that the filing of a complaint that is well grounded in fact and warranted by existing law cannot, as a matter of law, constitute harassment for purposes of rule 11. *E.g., Jennings*, 877 F.2d at 320; *National Assoc. of Gov't Employees, Inc. v. National Fed'n of Fed. Employees*, 844 F.2d 216, 223–24 (5th Cir.1988); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986). Although the filing of a paper for an improper purpose is not immunized from rule 11 sanctions simply because it is well grounded in fact and law, only under unusual circumstances—such as the filing of excessive motions—should the filing of such a motion constitute sanctionable conduct. *See National Assoc. of Gov't Employees*, 844 F.2d at 224; *Zaldivar*, 780 F.2d at 832 n. 10.

■ To determine whether a filing caused harassment, the focus is upon objectively ascertainable circumstances rather than subjective intent. *E.g., National Assoc. of Gov't Employees*, 844 F.2d at 224. "As Judge Schwarzer has stated: 'If a reasonably clear legal justification can be shown for the filing of the paper in question, no improper purpose can be found and sanctions are inappropriate.'" *Id.* (quoting Schwarzer, *supra*, 104 F.R.D. at 196). We noted in *Sheets I* that

> [t]here appears to be no basis for sanctioning [defendants] for forcing [plaintiff] to execute service of process on Yamaha Japan under the Hague Convention. Yamaha Japan clearly had the right to be served under the proper service procedure. The two corporations appear to have had legitimate business reasons for insisting on this right, including avoidance of judicial piercing of the corporate veil and imposition of liability on one corporation for the acts of the other.

*Sheets I*, 849 F.2d at 185 n. 5. The district court's only ground for finding that the separate identity of the defendants was not observed was the fact that they both retained the same attorney. Apart from the fact that Yamaha Japan was exercising its right to proper service of process, the fact that two corporations retain the same attorney is hardly any basis for disregarding their corporate entities, and it is certainly not adequate to overcome the defendants' legitimate interest in avoiding the piercing of the corporate veil and the imposition of liability for one another's acts.

In summary, we conclude that Yamaha Japan's motion insisting on service of process in accordance with the Hague Convention was well founded in fact and warranted by existing law, and was interposed for a legitimate purpose. Therefore, the district court's award of rule 11 sanctions was an abuse of discretion.

## II. Discovery Sanctions

■ In *Sheets I*, this court remanded the case to the district court so that it could make clear what "specific behavior the court was sanctioning and what rules, or provisions within these rules, the court relied upon to award sanctions." *Sheets I*, 849 F.2d at 186. In response to this directive, the district court ordered the plaintiff to submit proposed findings of fact and law setting out (1) the particular conduct in question, (2) whether such conduct violated a court order, (3) the specific amount of time and expenses plaintiff's attorneys were wrongfully caused to expend as a result of each item, and (4) the particular federal rule supporting an award of sanctions. After finding that the plaintiff's submissions fell "woefully short of complying with this order," the district court denied attorney fees and refused to award any discovery sanctions under rules 26(g) and 37.

The plaintiff contends that the district court was unnecessarily harsh and conservative in failing to award sanctions. Reviewing the plaintiff's submissions, however, we fail to find that the denial of discovery sanctions constituted an abuse of discretion. The district court was unable to discern how the unspecified expenses were incurred as a result of defendants' conduct, and was not convinced that the attorney time claimed was the result of

defendants' conduct.[3] We agree that the inability of plaintiff to show how defendants' wrongful conduct caused any harm is a proper basis for denying sanctions, and affirm this decision as within the bounds of the district court's discretion.

## III. Costs

Finally, defendants contend that taxing costs against them was an abuse of discretion since they were the prevailing party. Fed.R.Civ.P. 54(d) provides:

> Except when express provision therefor is made in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs....

In reviewing a district court's decision regarding costs, we will reverse only if an abuse of discretion is shown. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir.1985).

 We begin by noting that the dismissal of a plaintiff's suit with prejudice is tantamount to a judgment on the merits for the defendants, thereby rendering them the prevailing parties. *Schwarz*, 767 F.2d at 130; 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2667, at 178–80 (1983). As prevailing parties, defendants enjoy a strong presumption that they will be awarded costs. *E.g., United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532, 539 (5th Cir.1987), *cert. denied*, 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988); *Schwarz*, 767 F.2d at 131; 10 C. Wright, A. Miller & M. Kane, *supra*, § 2668, at 200–01.

 Nevertheless, rule 54(d) permits the district court to exercise its discretion and refuse to award costs to the prevailing party. *E.g., D.K.G. Appaloosas*, 829 F.2d at 539; *Schwarz*, 767 F.2d at 131–32; *Breeland v. Hide–A–Way Lake, Inc.*, 585 F.2d 716, 722–23 (5th Cir.1978), *amended on*

*rehearing on other grounds*, 593 F.2d 22 (5th Cir.1979); *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526–27 (5th Cir. 1977). Furthermore, in exceptional circumstances, the district court may actually tax costs against the prevailing party as a sanction. *See, e.g., Weaver v. Bowers*, 657 F.2d 1356, 1362 (3d Cir.1981) (en banc) (permitting the taxing of costs against prevailing parties due to their inexcusable delay in waiting to raise a decisive issue until a post-trial motion), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *cf. Thompson v. Sun Oil Co.*, 523 F.2d 647, 650 & n. 4 (8th Cir.1975) (taxing appellate costs against prevailing party because of their lack of good faith and evasiveness during the discovery process). *See generally* L. Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 555–63 (1984). In either case, however, the district court is required to provide justification for its actions. *See, e.g., Breeland*, 585 F.2d at 722–23; *Walters*, 557 F.2d at 526–27. Here, the district court failed to state its reasons for taxing costs against the defendants.

 Notwithstanding this omission, we find that the failure to provide justification is not fatal given the clear grounds contained in the record for taxing costs against the prevailing parties. The district court noted that it was forced to endure defendants' repeated and abusive hardball tactics. For example, the defendants unjustifiably refused to produce documents in response to discovery, violating an order to compel; they repeatedly and falsely denied having applied for and/or having patent rights in the air snorkel device; they misled the plaintiff about the nature of various documents; and, without any apparent reason, they were unwilling to state that certain information or claims should be direct-

---

**3.** For example, the plaintiff claimed that the following times and expenses were incurred as a result of defendants' wrongful conduct during discovery:

For items 1 and 4 [denying application for patent or possession of any patent documents for the air snorkel device]:

| | | |
|---|---|---|
| Herman | — 21 hours | $ 2,100.00 |
| Lane | —210 hours | $21,100.00 |
| Carpenter | — 16 hours | $ 1,600.00 |
| Keaty | — 43 hours | $4,300.00 |
| Unspecified Costs— | | $10,755.00 |

For item 3 [misleading description of documents]:

| | | |
|---|---|---|
| Herman | — 6 hours | —$ 831.00 |
| Lane | —25 hours | —$2,500.00 |
| Carpenter | —16⅓ hours | —$1,633.00 |
| Keaty | —21⅔ hours | —$2,166.00 |
| Unspecified Costs— | | $2,600.00 |

ed to one Yamaha entity rather than the other. These "obfuscatory defense strategies" and the "gun shot approach to their defense" caused the district court "at a minimum a waste of conference and trial time," and unnecessarily led plaintiff on a "wild goose chase." The court found these bad faith tactics especially frustrating, given the defendants' strong case on the merits. Misconduct, bad faith, and abuse of the trial process are all grounds for refusing to award costs to the prevailing parties, and here they also provide a suitable basis for taxing costs against the prevailing parties. *See* L. Bartell, *supra*, at 555–56, 562–63.

Therefore, under the egregious circumstances of this case, we find that the district court did not abuse its discretion in taxing costs against the defendants.

### Conclusion

For the foregoing reasons, the award of rule 11 sanctions is reversed, and the denial of discovery sanctions and the taxing of costs against the defendants is affirmed.