[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 25, 2006
THOMAS K. KAHN
CLERK

No. 06-12713
Non-Argument Calendar

_____

D. C. Docket No. 03-00053-CV-FTM-33-DNF

JOHN PABLO CAMPOS,

Plaintiff-Appellee,

versus

CITY OF NAPLES, Collier County,
DON HUNTER, Sheriff,

Defendants,

RYAN TUTT, Deputy,
DAVID KAYE, Sgt.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 25, 2006)**

Before ANDERSON, BIRCH, and HILL, Circuit Judges.

PER CURIAM:

John Pablo Campos, a prisoner in the State of Florida penal system, filed a pro se federal civil rights complaint in the district court against two Collier County deputy sheriffs. Prior to trial, the district court entered an order granting defendants' motion for summary judgment and dismissing the case. In the same order, however, the district court *sua sponte* sanctioned defendants and their counsel for their "recalcitrant actions," in the conduct of the defense. Although acknowledging that the defense motion for summary judgment was filed two days prior to the deadline established by the court's own scheduling order, the district court characterized it as an "eleventh hour" filing. The district court then speculated that this "lack of due diligence" might have been "aimed at generating increased legal revenues at the expense of taxpayers." Finding defendants "handling of this matter was unprofessional," and an "abuse of the judicial process," the district court awarded $3,786.62 to plaintiff's court-appointed counsel to offset the "costs unnecessarily incurred by [them] in prosecuting this action," and ordered the defendants to pay within five days. Plaintiff was ordered to file a motion for contempt of court should defendants fail to timely comply.

Defendants filed a motion for reconsideration of the sanctions award. They contended that the court's findings of delay, unprofessional conduct, and recalcitrance were not supported by the record, but were, in fact, contradicted by the record. They noted that, as the prevailing parties, they were the ones due

2

attorneys' fees under the law.

One day later, plaintiff's counsel filed a motion for contempt, which the district court granted, finding defendants' motion for reconsideration to be "without legal foundation and further evidence of Defendants dilatory and contemptuous attitude toward the Court and the defense of this matter." The district court also characterized the defendants' suggestion that they were entitled to attorneys' fees as arrogant, and made "in strong-arm fashion."

The defendants filed this appeal. Although the district court failed to specify under what theory it awarded sanctions against the defendants, we shall reverse the award for, under any theory, we conclude that the award was an abuse of the district court's discretion.I.

On January 30, 2003, John Campos filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that Deputy Sheriffs Ryan Tutt and David Kaye used excessive force in arresting him in January of 2002. Although he filed a motion for appointment of counsel, the court denied it.

Service of process was not perfected until July 11, 2003.[1] In their answers, filed July 31, Tutt and Kaye asserted that they were entitled to qualified immunity, but also that Campos's § 1983 claims were barred as a matter of law because

---

[1]The lapse of this period of time seems to be attributable to normal delays in a pro se prisoner case, including the disposition of the motion to proceed *in forma pauperis*.

Campos was convicted of resisting arrest and aggravated battery on a law enforcement officer in connection with the complained-of-arrest, citing *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* bars civil claims under § 1983 for excessive force where recovery would undermine plaintiff's conviction for criminally resisting the arrest.

Approximately six months later, on January 23, 2004, Tutt and Kaye filed a motion to dismiss for failure to prosecute, alleging that Campos had taken no action in the case since February of 2003, when he filed a Prisoner Consent Form. Campos failed to respond to the motion. On February 12, 2004, the district court denied the motion on the grounds that Campos was "not in violation of any Court ordered deadline."

On February 20, the court entered a scheduling order, which set the deadline for discovery at April 24, 2004, two months later. The summary judgment motion deadline was set for May 25, 2004.

During March of 2004, Campos moved again for appointment of counsel, and Tutt and Kaye moved to depose the incarcerated plaintiff. In April, Campos opposed the motion for deposition on the grounds that he did not have an attorney. The court stayed the case pending its consideration of the motion for appointment of counsel. In view of the stay, Tutt and Kaye moved to extend the deadline for discovery.

4

In April, the court appointed counsel for Campos and stayed discovery for thirty days in order to give court-appointed counsel time to review the case.

In July, Tutt and Kaye renewed their motion to depose Campos. Campos's court-appointed counsel did not file any opposition to defendants' motion, and the court granted the motion, ordering the deposition to occur within thirty days. Tutt and Kaye moved for and were granted a four-day extension of time for the taking of Campos's deposition.

Campos was deposed on August 24, 2004. After the deposition, defense counsel advised Campos's attorney that they believed the *Heck* defense had been established by Campos's testimony.

On September 20, 2004, the case was reassigned to the presently presiding district court judge. At this point, the case seems to have ground to a halt. There is no record activity at all until the next May 10, 2005, when the magistrate judge ordered the case to be re-designated as a Track Two case under Middle District of Florida Local Rule 3.05 and directing the parties to meet and prepare a case management report. Under Local Rule 3.05(c)(2)(E), Track Two cases should be tried within two years of filing and, if possible, such cases should be tried within one year of filing.

The parties filed their joint case management report on July 14, 2005, and on July 15, the court entered a Case Management and Scheduling Order. That order

5

set the deadline for summary judgment motions at March 14, 2006, and established a trial date of July 3, 2006.

On November 30, 2005, the district court *sua sponte* amended these deadlines, moving the summary judgment deadline up to February 15, 2006, and the trial date to March 6, 2006.

On December 15, 2005, Campos's court-appointed counsel moved to withdraw their representation, citing "legal research, ethical considerations, and irreconcilable differences between the undersigned attorneys and the Plaintiff." The court denied the motion on December 16, noting that the preliminary pretrial conference was scheduled five days later, on December 20.

At the preliminary pretrial conference, the district court noted that it had moved the case deadlines up in order to get the case concluded within the three years mandated by the Civil Justice Reform Act. The court stated that "I moved it up when I realized I was violating the Civil Justice Reform Act. That's why I moved it up." The court also refused to allow court-appointed counsel to withdraw, characterizing counsel's motion as a "late filing" and an "11[th] hour" request.[2] Noting again that the case must be tried within three years of its filing, the court remained firm in its commitment to try the case in March.

---

[2]Plaintiff's counsel noted that at the time he filed his motion to withdraw, December 16, the trial was still set for the following July.

The district court held its final pretrial conference in this case on February 2, 2006. At the conference, the court and counsel spent considerable time trying to establish the order and duration of trials, including this one, scheduled on the court's March trial calendar. Deep into this conversation, defendants pointed out that they would be filing a motion for summary judgment that they believed might be dispositive of the case. At this point, and for the first time, the court expressed its "disappointment" that defendants had not previously filed such a motion.

Defendants responded by pointing out that the original trial date was over two months away, so that any such motion would not have been due for over a month. Furthermore, the then operative deadline for such motions was two weeks away. Finally, they noted that they had more than one conversation with Campos's counsel regarding the *Heck* issue and its potentially dispositive impact on the case.

The court acknowledged that neither the revised nor the original deadline for filing the motion had passed, but stated that an earlier filing would have been a "courteous thing to have done."[3] The district court, however, gave no notice that it was considering sanctions. The court, in fact, stated that it understood why it took so long to file such a motion when one represented government defendants and worked with "limited resources" on "a hundred" cases.

_____

[3]The court noted that one reason for early filing of a dispositive motion is "so that defendants can go on their way, [and] Mr. Campos can get on with his life. Of course, it is defendants whom the court ultimately sanctioned, and Mr. Campos is incarcerated.

Five days after this conference, the court entered a Second Amended Case Management and Scheduling Order. The court did not alter the deadline for filing the motion for summary judgment. Two days before the expiration of the deadline, on February 13, 2006, defendants filed their motion, asserting both the *Heck* and qualified immunity defenses.

Campos's response vigorously asserted the inapplicability of *Heck*, and undertook to distinguish the cases relied upon by defendants. He criticized defendants for waiting "until the 11[th] hour" to file their motion. He submitted the affidavit of an expert on use of force who opined that the deputies could not have believed that their use of force was reasonable. He also made the argument, unsupported by any legal authority, that defendants had waived their right to assert qualified immunity because the motion was not filed "in an expeditious manner."

On March 3, 2006, the court entered an order continuing the final pretrial conference in this case. The court also ordered Campos's counsel to file a list of expenses incurred in prosecuting the case. No notice of intent to sanction, nor hearing on such a matter was given.

On March 30, 2006, the district court entered an opinion and order granting defendants' motion for summary judgment. The court's opinion spent four pages examining the *Heck* issue, concluding that "despite Plaintiff's earnest and noble attempt to vigorously prosecute this action," it was clear that it was barred. Then,

8

on its own motion, the court entered the sanctions order appealed herein. No

hearing was provided. No legal authority was cited for the award. We review such

an award for an abuse of discretion. *Serra Chevrolet, Inc. v. General Motors

Corp.*, 446 F.3d 1137 (11th Cir. 2006).

## II.

First, we note that the district court did not provide defendants meaningful

notice or an opportunity to be heard prior to the entry of sanctions.[4] Whatever the

source of authority upon which the district court drew, sanctions designed to

compensate one party for expenses incurred due to the opposing party's

misconduct is in the nature of civil contempt, requiring notice and the opportunity

to be heard prior to the award. *Id.* at 1147; *B.L. Harbert Intern., LLC v. Hercules

Steel Co.*, 441 F.3d 905, 914 (11th Cir. 2006) ("[W]e can raise and consider

sanctions on our own, after giving the party notice and an opportunity to be

heard"); *Kaplan v. Daimler-Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)

(court-initiated sanctions require meaningful notice and opportunity to be heard

prior to entry); *Oakes v. Horizon Financial, S.A.*, 259 F.3d 1315, 1320 n.5 (11th

Cir. 2001) (notice and opportunity to be heard required as part of sanctions

process). Even the award of sanctions under the court's inherent power must

---

[4]Nor was a hearing held on defendants' motion for reconsideration.

9

"comply with the mandates of due process." *Cambers v. NASCO, Inc.*, 501 U.S. 32, 49-50 (1991).[5]

We agree with defendants that notice and a hearing was required in this case. The district court sanctioned defendants for failing to "expeditiously file [the *Heck*] motion," characterizing the entire rest of the case as "unnecessary" since "plaintiff did not have a meritorious claim." Had they been afforded their due process right to answer these criticisms, defendants could have pointed out that not only had they discussed the *Heck* defense on more than one occasion with Campos's counsel (in addition, of course, to its presence in their formal Answer), but counsel had told defendants he thought it was distinguishable on the facts of this case.[6] It took the district court four pages to reach the conclusion that *Heck* bars plaintiff's claim in this case, a conclusion reached in part, the court said, because it did not possess the psychic abilities necessary to determine on what basis the jury reached its verdict.[7]

---

[5]Additionally, the imposition of sanctions must include a determination of the ability of the sanctioned parties to pay. *Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1337 (11th Cir. 2002). The sanctions order in this case awards sanctions against the deputies as well as counsel, apparently on the basis of plaintiff's submission of costs, without benefit of any response from defendants or consideration of their ability to pay.

[6]The district court also accused the defendants of "permitting this case to unnecessarily languish on the court's docket for over three years." In fairness to defendants, it must be noted that they did not bring this case; plaintiff did. Additionally, after its re-assignment to the presently presiding judge, eight months elapsed before the magistrate judge issued a scheduling order.

[7]*Heck* bars plaintiff's claim because it would necessarily imply that his conviction for resisting arrest was invalid.

10

Similarly, defendants cannot be faulted for not anticipating that the district court would ultimately conclude that their *Heck* defense was meritorious.

In addition, defendants have been handicapped in this appeal by having to speculate upon what authority the district court relied for its award of sanctions. While not drastically different, it is nonetheless true that the propriety of the award of sanctions depends to some degree upon the statutory basis for their award, including the scope of the court's authority under the statute. For example, we have said repeatedly that 28 U.S.C. § 1927 is not a "catch-all" for awarding sanctions in a case where there is not some other more appropriate vehicle for doing so. *Schwartz v. Millon Air Co.*, 341 F.3d 1220, 1225 (11th Cir. 2003). Similarly, we have said that when the district court relies upon its inherent power to sanction the parties before it, it must proceed cautiously, and "with restraint and discretion." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).

On appeal, our review is also hindered by the failure of the district court to specify upon what authority it relies. A court abuses its discretion in entering sanctions "if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Schwartz*, 341 F.3d at 1225. For example, Section 1927 requires that the district court find objective bad faith before imposing sanctions for "vexatious" conduct. *Id.* Without knowing upon what authority the district court, relies, it is impossible

11

for us to perform a meaningful review.

Ordinarily, we would vacate this award and remand for a hearing on the sanctions award, affording the court the opportunity to specify the authority upon which it relies and defendants their due process right to be heard before sanctions are awarded. *See e.g.*, *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 539-40 (5th Cir. 1990) (remanding for specification of rules relied upon for award of sanctions). In this case, however, we decline to do so because we hold that, under any legal theory, the district court abused its discretion in imposing sanctions in this case because its findings of fact are clearly erroneous.

Defendants in this case did not violate any court rule, court deadline, court request, or other court requirement that would justify the imposition of sanctions.[8] Indeed, the district court's enumeration of the reasons for sanctions includes no deadline that defendants missed, only the general complaint that defendants did not act speedily enough to allow the court to avoid its self-imposed deadline of disposition within three years of filing – a deadline missed, at least in part, by the eight months that elapsed between the reassignment of judges and the magistrate's issuance of a new scheduling order. Therefore, there is simply no factual basis upon which to find that the defendants were recalcitrant or otherwise in violation

---

[8]Also not factually true was the court's assertion that counsel failed to appear personally at mediation. The court appears to have relied upon a faulty mediator's report for this incorrect assertion.

of court rules or requests.

As to the court's complaint that the defendants allowed the case to languish upon its docket, when they attempted to remove the case from the docket by motion to dismiss based upon plaintiff's failure to prosecute the case for six months, the district court characterized the motion as without merit because plaintiff had missed no court-imposed deadline.

Finally, merely because the court ultimately ruled in defendants' favor on the *Heck* defense, we do not agree that *defendants* can be charged with liability for *plaintiff's* meritless claim. In the two cases cited by Campos in his opposition to rehearing, costs were taxed against prevailing defendants because they engaged in egregious conduct, including violating court orders and falsely claiming critical facts to be untrue, as well as raising a winning issue for the first time after trial. *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 539-40 (5th Cir. 1990); *Weaver v. Bowers*, 657 F.2d 1356, 1362. Neither of these cases is remotely applicable to the facts of this case.[9]

### III.

We support the district court's power to supervise its docket and to sanction parties under the appropriate legal authority. Nonetheless, we conclude that the

---

[9]Additionally, Rule 54 does not authorize a court to order that the prevailing party pay the nonprevailing party its costs. *Worsham v. United States*, 828 F.2d 1525, 1527 (11th Cir. 1987).

exercise of that power in this case was an abuse of discretion because the findings of fact upon which it was based were clearly erroneous. Defendants did not miss any court-imposed deadlines, nor fail to raise any meritorious defenses in a timely fashion. Accordingly, the award of sanctions is

REVERSED.