# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-IA-01244-SCT

*RIVERBOAT CORPORATION OF MISSISSIPPI*
*d/b/a GOLDEN NUGGET BILOXI HOTEL AND*
*CASINO*

*v.*

*TRESYLA DAVIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/21/2020 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | CARLOS EUGENE MOORE |
| | JUSTIN DONTRELL SMITH |
| | BRITT R. SINGLETARY |
| | BRADLEY CLAYTON MOODY |
| | ROBERT CHRISTOPHER WHITE |
| | ALFRED THOMAS TUCKER, III |
| | TANGALA LANIECE HOLLIS |
| | DARRYL ANTHONY WILSON |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF HARRISON COUNTY |
| ATTORNEYS FOR APPELLANT: | SAMUEL DEUCALION GREGORY |
| | ROBERT CHRISTOPHER WHITE |
| ATTORNEY FOR APPELLEE: | CARLOS EUGENE MOORE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 06/09/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is a granted interlocutory appeal stemming from the decision by the Circuit Court

of the Second Judicial District of Harrison County to grant a Mississippi Rule of Civil

Procedure 60(b)(1) motion. Riverboat Corporation of Mississippi (Riverboat) argues that the trial court committed reversible error "by granting [Tresyla Davis's] request to reopen the case, when the two alleged instances of fraud are demonstrably incorrect and the trial court failed to consider all of the elements of fraud necessary to justify the extraordinary relief under Rule 60(b)(1)[.]"

¶2.     This Court finds that Davis failed to prove all the necessary elements of fraud by clear and convincing evidence and that the trial court abused its discretion by granting the Rule 60(b)(1) motion. Therefore, we reverse the grant of the Rule 60(b)(1) motion and reinstate the summary judgment previously granted to Riverboat.

### FACTS

¶3.     On November 27, 2014, Davis and her stepmother visited the Golden Nugget Biloxi Hotel and Casino, which is owned by Riverboat. While at the casino, Davis was playing the slot machines when the chair[1] in which she was sitting fell backward. Davis claimed she suffered physical and emotional injuries as a result of the fall.

¶4.     On January 27, 2015, Davis filed a premises liability action against Riverboat in the Circuit Court of the Second Judicial District of Harrison County. During the discovery process, Davis submitted "only two interrogatories, one request for production of documents, and one request for admission." Davis "did not serve any written discovery related to the subject chair."

---

[1] The chair was a "sled slot chair," which was described as a chair that "does not have legs. The seat of the chair sits on a post and the base of the chair is a steel platform. The base of the chair is capable of sliding under the slot machine."

¶5.     On June 21, 2016, Davis deposed Anne Mosher, the designated representative for Riverboat pursuant to Mississippi Rule of Civil Procedure 30(b)(6). Counsel for Davis asked the following:

> Q.     About the chair, how is the chair–how is it made? Is it–I think it said something about it interlocks with the actual slot machine?
>
> A.     It's called a slot chair, yes. It has a lip that hooks underneath the chair. When you sit down in the chair, just in general sitting position, it stays locked.
>
>        If you put too much weight or force on the back of the chair, as any chair, it will flip back, you know. It's just not made to be able to sustain that.
>
> . . . .
>
> Q.     Let's kind of go back to the chair. Do you know much about the actual model–of the actual model that she was sitting in? You said if you apply too much weight on the back, it will fall backwards. Is there a weight capacity or is there a certain way that it has to sit in order to not fall back? Is there, like, a weight–I don't know if you understand what I'm saying.
>
> A.     I'm not a chair expert, but they way the chair is made, it's just a basic bottom and, you know, the back and top. So any chair, even these, if you try to sit on this part or further back on this part, the chair is going to flip backwards. I don't know the model of it or anything, but it's just a basic chair. We've got them all over the casino.

Davis did not ask any more questions regarding the condition or specifications of the chair.

Riverboat's counsel then asked Mosher the following regarding the chair:

> Q.     [W]as the subject chair segregated from the casino floor, removed from the casino floor following this accident?
>
> A.     Yes. After the accident, it was preserved in another room.
>
> Q.     And have you had an opportunity to inspect the subject chair?

A.    Yes.

Q.    Following the accident?

A.    Yes. It's fine. There's no defects or malfunctions with it.

¶6.    On September 29, 2016, Riverboat filed a motion for summary judgment, alleging that there was no genuine issue of material fact because Davis had not shown that the chair was defective. Davis filed a response opposing Riverboat's motion for summary judgment. After a hearing on the motion was held, the trial judge granted Riverboat's motion for summary judgment, determining that Davis "[had] failed to produce 'sufficient evidence of the essential elements of her claim,' making summary judgment proper." Additionally, the trial judge said,

> although [Davis] contends a dangerous condition existed at the time of her fall–the base of the chair not being under the slot machines–[Davis] has failed to produce evidence that this, in and of itself, is a defective chair design or a dangerous condition. [Davis] has presented no proof that it is necessary for the base of the chair to be under the slot machines to be used safely by guests. In addition, even assuming such is a dangerous condition, [Davis] has produced no evidence as to whom, when or how the base of the chair was removed from under the slot machines, much less that [Riverboat] created this condition, knew of its existence, or that it existed so long that, in the exercise of reasonable case, [Riverboat] should have known of its existence in time to cure it or warn of it. The only evidence offered by [Davis] as to this is an allegation that an unidentified employee made a statement relating to the chair's base following [Davis's] turning the chair over. This is not evidence of a defective design, dangerous condition or who, when or how the base of the chair was removed from under the slot machines. [Davis's] actions could have caused the base of the chair to come out from under the slot machines. [Davis's] contention that the chair fell over because [Riverboat] failed to inspect it is speculative, improperly stacks inference upon inference and is not supported by evidence. [Davis] has presented no proof as to [Riverboat's] inspection schedule.

The order granting Riverboat's motion for summary judgment was filed on April 13, 2017.

4

¶7. On October 3, 2017, Davis filed a Motion to Reopen Case and Set Aside Summary Judgment Order pursuant to Rule 60(b)(1) of Mississippi Rules of Civil Procedure, arguing that she had "discovered fraudulent behavior/conduct on the part of Defendant [Riverboat], throughout the duration of the previous litigation." Davis "alleged that she learned from public filings in an unrelated lawsuit that the base of another slot machine chair had been altered." In the unrelated lawsuit, ***Johnston v. Riverboat Corp. of Mississippi***,[2] the manufacturer of the sled slot chair, one of the defendants in the case, submitted supplemental responses that "stated the slot chair's quick release base [was] intended to be secured in a properly installed bracket while in use by guests." (Emphasis omitted.) Davis claimed that Riverboat had engaged in fraudulent behavior during Mosher's deposition testimony when Mosher testified that the slot chair "had no defects or malfunctions." Also, Davis claimed that, at the hearing on the motion for summary judgment, Riverboat had denied "that any modifications had been made to the sled slot chairs[.]" The next day, Davis amended her motion to reopen the case to assert that, in the ***Johnston*** case, "Defendant Riverboat [had been] publicly confronted for making alterations to the slot chairs. Through investigation, [Davis] learned that the slot chairs were not only tampered with but cut down by five inches." To support her motion, Davis attached Riverboat's motion for protective order filed in the

---

[2]***Johnston*** was filed in the Circuit Court of the Second Judicial District of Harrison County under cause number 24C12:16-CV-00125.

5

*Johnston* case. In the motion for protective order, "the plaintiff's lawyer in that unrelated lawsuit stated that the base of a different slot chair had been shortened five inches."[3]

¶8.    On February 22, 2018, a hearing was held regarding Davis's motion to reopen the case and to set aside summary judgment. At the hearing, Davis argued that Mosher's Rule 30(b)(6) deposition testimony, which stated that there were no malfunctions or defects of the chair, was fraudulent and misleading because the casino's chairs had been modified. In response, Riverboat argued:

> There's another case called *Johnson* [sic]. That case was filed, I believe, after Davis, but it doesn't matter. The chairs were cut off.
>
> Now, where the rubber hits the road here, in my opinion, is that if the chairs were cut off because they were somehow malfunctioning or deficient is completely in error. It is not true.
>
> . . . .
>
> During the course of the *Johnson* [sic] case, of course we produced to [*Johnston*'s counsel] showing that we had modified the chairs . . . .
>
> We called the manufacturer–all this is in e-mails. And, of course, [Davis's counsel] is a nice guy, I like him a lot, but he didn't ask for any of this information. He has two discovery productions and two interrogatories. That's it. And both of–the two of those on both sides were about dealing with what our insurance coverage was.
>
> So we–the Gaster company that made these chairs–[*Johnston*'s counsel] got all the information from them. And it shows, yes, that we inquired and people don't like these chairs. That's fine. You've got a 30-inch. They can be cut off at 25. They can be cut at 23. We determined to cut them off at 25, according to their own specs, had Dellinger Metal Works do that.

---

[3]The lawyer representing Johnston said the following to Riverboat employees while he was on property inspecting and photographing the subject chair at issue in the *Johnston* case: "Ya'll are stupid assholes for cutting that chair down by five inches."

> There was nothing–the chairs are designed to go up under the front of the slot machine. The slot box or the base is generic . . . . There was nothing malfunctioning about the chairs when they were modified.
>
> There's also–nobody lied to anybody about them being modified. That's how [*Johnston*'s counsel] found out about it because she filed voluminous discovery, which was not done here. Two questions were asked, two requests for production of documents were asked, on both sides. . . . Nobody asked for anything about did you modify the chairs, give us your e-mails, have you contacted the manufacturer, all of which was done up front in the–this is just an attempt to revitalize the case.

The trial judge granted Davis's motion to reopen the case and to set aside summary judgment on August 21, 2020. The trial court determined that Davis satisfied her burden to reopen the case under Rule 60(b)(1) because

> in [*Johnston*]. . . , Defendant Gasser Chair Co., Inc. (manufacturer of the sled slot chair) supplemental responses, it stated that the slot chair's quick release base is intended to be secured in a properly installed bracket while in use by guests. Further, in [*Johnston*,] . . . Defendant Riverboat were [sic] publicly confronted for making alterations to the slot chairs. Through investigation, . . . , [Davis] learned that the slot chairs were not only tampered with but cut down by five inches.

¶9. On August 31, 2020, Riverboat filed a motion to reconsider. The trial judge denied Riverboat's motion to reconsider order granting Davis's motion to reopen case and set aside summary judgment. Aggrieved, Riverboat filed a petition for interlocutory appeal, questioning whether Davis "submit[ted] clear and convincing evidence of fraud to support the Harrison County Circuit Court's decision to reverse the final judgment of dismissal under Rule 60(b)(1)?" This Court granted Riverboat's petition on January 14, 2021.

STANDARD OF REVIEW

¶10.    "[W]hen this Court reviews motions for relief pursuant to Rule 60(b), reversal is warranted only when an abuse of discretion is found, because these motions are to be addressed at the sound discretion of the trial court." *Finch v. Finch*, 137 So. 3d 227, 232 (Miss. 2014) (citing *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)). This Court has held also that

> [r]eview of a denial of a Rule 60(b) motion considers only whether a judge abused the broad discretion granted by that rule which provides for extraordinary relief granted only upon an adequate showing of exceptional circumstances, and neither ignorance nor carelessness on the part of an attorney will provide grounds for relief. *King v. King*, 556 So. 2d 716, 722 (Miss. 1990). A party is not entitled to relief merely because he is unhappy with the judgment, but he must make some showing that he was justified in failing to avoid mistake or inadvertence; gross negligence, ignorance of the rules, or ignorance of the law is not enough. *Id.* at 722.

*Perkins v. Perkins*, 787 So. 2d 1256, 1261 (Miss. 2001). "'[A]n order denying a motion under Rule 60(b) is final and appealable' . . . . But an appeal from a denial of the motion brings up for review only the order of denial itself and not the underlying judgment." *DeSoto Cnty. v. Standard Constr. Co., Inc.*, 283 So. 3d 102, 108 (Miss. 2019) (internal quotation marks omitted) (quoting *Overbey v. Murray*, 569 So. 2d 303, 305 (Miss. 1990)).

## DISCUSSION

**The trial court abused its discretion by granting Davis's Rule 60(b)(1) motion.**

¶11.    Davis argues that "Riverboat committed fraud, misrepresentation, or misconduct by asserting that the slot chair had no defects or malfunctions[.]" Davis asserts also that "[g]ood cause exist[ed] for setting aside the order granting summary judgment due to Riverboat's

8

fraudulent behavior and conduct, throughout previous litigation (*Johnston* case)." Riverboat responds that "[Davis] did not argue, and the trial court did not find, that all of the elements of fraud existed." Specifically, Riverboat contends that "[Davis] was required to prove all nine (9) elements [of fraud] in order to show the 'exceptional circumstances' entitling [her] to the 'extraordinary' relief available under Rule 60(b)(1)."

¶12. "Rule 60(b)(1) deals with relief from judgment obtained by fraud, misrepresentation, or other misconduct of the adverse party. In those circumstances, the burden is upon the movant to prove fraud, misrepresentation or other misconduct, and to do so by clear and convincing evidence." *Stringfellow*, 451 So. 2d at 221 (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978)). This Court has held that to constitute fraud, the movant must show:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Id.* (citing *Gardner v. State*, 235 Miss. 119, 108 So. 2d 592 (1959)).

¶13. Davis satisfied the first element of fraud because she asserted two misrepresentations in her motion. The two alleged misrepresentations she asserted as the basis for reopening the case and setting aside summary judgment were that: (1) Riverboat's representative, Mosher, "basically contended that the slot chair had no defects or malfunctions, and [Davis] fell because of the way [s]he was sitting in the chair[,]" and, (2) during the hearing on the motion for summary judgment, Riverboat denied that "any modifications had been made to the sled

9

slot chairs[.]" While Davis did assert the second alleged misrepresentation, the word *modification* was not spoken at the summary judgment hearing. At the hearing for the motion to reopen the case, Davis's attorney explained:

> Your Honor, I want to make note that during the oral arguments of the summary judgment that we had before you, you were given some documentation showing pictures, and during that time looking at the photos, from my understand [sic] if I can recollect, there was a question about whether chairs had arrived from the manufacturer in that condition, but there was no talks about whether or not they had been modified by the actual casino. So I thought that that was also rather misleading as well.

Photographs from the incident report were tendered to the trial court at the hearing for summary judgment; but no such question was asked. Based on the record before the Court, clear and convincing evidence was presented that during the summary judgment hearing Riverboat did not acknowledge that it had made a modification to the sled slot chair. The trial court abused its discretion by accepting this alleged misrepresentation as a basis for setting aside summary judgment and reopening Davis's case.

¶14.    Although Davis did satisfy the first element of fraud, she did not assert properly the remaining elements. In her motion, Davis made general statements addressing some of the elements of fraud. But, she did not provide proof by clear and convincing evidence that Riverboat had committed the fraudulent misconduct she had alleged. Specifically, Davis failed to adduce clear and convincing evidence: (1) that Mosher's deposition testimony was false, (2) that there was any materiality or relationship between the chair's being five inches shorter and Davis's fall, (3) that Mosher knew the subject chair had been shortened by five inches, (4) that Mosher expected Davis to rely on the misrepresentation, if any, (5) that Davis

had relied on the misrepresentation, (6) that Davis was ignorant of the modification, (7) that Davis had a right to rely on the information provided by Riverboat regarding the modification, and (8) that Davis suffered an injury as a result of fraudulent misrepresentations by Riverboat.

¶15. This Court has recognized that "Rule 60(b) motions are reserved for 'exceptional circumstances,' and a party is not entitled to relief simply because he is unhappy with a judgment." *Standard Constr. Co.*, 283 So. 3d at 108 (internal quotation marks omitted) (quoting *McNeese v. McNeese*, 119 So. 3d 264, 272 (Miss. 2013)). We have recognized also that "Rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies." *M.A.S. v. Miss. Dep't of Hum. Servs.*, 842 So. 2d 527, 530 (Miss. 2003) (internal quotation marks omitted) (quoting *City of Jackson v. Jackson Oaks Ltd. P'ship*, 792 So. 2d 983, 986 (Miss. 2001)). "A party is not entitled to relief merely because he is unhappy with the judgment, but he must make some showing that he was justified in failing to avoid mistake or inadvertence; gross negligence, ignorance of the rules, or ignorance of the law is not enough." *Perkins*, 787 So. 2d at 1261 (citing *King*, 556 So. 2d at 722). The new evidence from the *Johnston* case does not satisfy the exceptional circumstances requirement of Rule 60(b). Davis did not show that her claim qualifies as an exceptional circumstance and was not merely the result of a mistake or gross negligence.

¶16. Davis could have discovered relevant information through the discovery process had she taken the proper time and effort. The same discovery procedures utilized by the plaintiff

in the ***Johnston*** case were available to Davis. However, she had chosen not to send ordinary discovery requests to Riverboat to inquire whether modifications had been made to the original design of the sled slot chair. Instead, Davis made two requests for production about Riverboat's insurance policy and made minimal use of discovery depositions. Davis used Rule 60(b)(1) as "an escape hatch" from the trial judge's grant of summary judgment. ***M.A.S.***, 842 So. 2d at 530 (quoting ***Jackson Oaks Ltd. P'Ship***,792 So. 2d at 986). Davis fell far short of utilizing numerous discovery tools that would have enabled her to obtain relevant information, and her failure to follow those procedures without cause does not constitute an exceptional reason to overturn summary judgment and reopen the case.

¶17.    This Court finds that Davis's motion to reopen the case and set aside summary judgment was "merely an attempt to relitigate [the] case" and should have been denied. ***Standard Constr. Co.***, 283 So. 3d at 108 (internal quotation mark omitted) (quoting ***McNeese***, 119 So. 3d at 272).

## CONCLUSION

¶18.    The trial court abused its discretion by granting Davis's motion to reopen the case and set aside summary judgment because Davis fell far short of satisfying all of the elements of fraud. Furthermore, the trial court erred by granting the Rule 60(b)(1) motion because of the absence of an exceptional circumstance. Therefore, we reverse the trial court's grant of Davis's motion to reopen the case, and we reinstate the trial judge's grant of summary judgment to Riverboat.

¶19.    **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**